**Tony SMITH and Smith Services, Inc.,[1] Appellants**

v.

**BEAR, INC. d/b/a Lake Express,[2] Appellants.**

**No. 2010–CA–001803–MR.**

Court of Appeals of Kentucky.

April 5, 2013.

Discretionary Review Denied by Supreme Court Feb. 12, 2014.

---

1. Pursuant to Court policy, the style of the case reflects the parties as listed in the text of the Notice of Appeal filed by the appellants. We note that the body of the Notice of Appeal identifies one of the appellants as "Tony Smith" while the style of the notice identifies him as "Tony H. Smith." Tony H. Smith

must be distinguished from his son, Tony W. Smith, who is also mentioned in this appeal.

2. The Notice of Appeal identifies the appellee as "Bear, Inc. Laker Express" in the style of the notice, but as "Bear, Inc. d/b/a Lake Express" in the text of the notice. Elsewhere, reference was made to "Lakers Express."

Based on the body of the Notice of Appeal, we will refer to the appellee as "Lake Express."

David Howard, London, KY, for appellants.

R. Aaron Hostettler, London, KY, for appellee.

Before COMBS, NICKELL, and TAYLOR, Judges.

## OPINION

NICKELL, Judge:

Tony Smith and Smith Services, Inc. (Smith Services) appeal from judgments and orders of the Laurel Circuit Court in favor of Bear, Inc. d/b/a Lake Express (Lake Express) awarding judgment to Lake Express in the amount of $90,863.22 for unpaid fuel charges and accrued interest incurred by Smith Services through August 1, 2010, plus additional interest thereon accruing at the rate of twelve percent (12%) per annum until paid in full, together with the amount of $42,330.38 for costs and fees paid to counsel. Upon a review of the record, we affirm in part and reverse in part and remand.

## I. FACTUAL AND PROCEDURAL HISTORY

Smith was the sole shareholder of Smith Services, a Kentucky corporation. Lake Express operates a gas station in London, Kentucky. Smith Services had an account at Lake Express and charged fuel to that account from 1999 to 2002, when Lake Express closed the account due to nonpayment. At the time the account was closed, there was an unpaid balance of approximately $26,000.00.

Neither Smith Services nor Lake Express memorialized in writing their understanding regarding the fuel account or what was to occur in the event of default. Moreover, Smith did not personally guarantee the Smith Services fuel account debt, and Lake Express required no security as collateral. Instead, in accordance with the operation of the fuel account, a Lake Express employee would simply write down the name of the Smith Services agent charging fuel and the amount of fuel pur-

chased, and thereafter provide Smith Services a slip or receipt of sorts with a purchase order number. All fuel purchases procured on the Smith Services' account were billed directly to Smith Services.

In February of 2002, after Smith Services stopped paying on its fuel account, Lake Express ceased accepting any further charges by Smith Services on the fuel account. Thereafter, Lake Express required Smith Services to pay all fuel charges on a monthly basis, which it timely did. However, Smith Services made no further payments to Lake Express on the $26,000.00 balance owed on the prior fuel account, and Lake Express began charging interest on the outstanding amount owed by Smith Services.

Smith closed Smith Services sometime in 2003. Smith testified the closure occurred after Smith Services was not paid on several contracts and creditors began to attach its liquid assets. The last tax return for Smith Services was filed in 2003. Smith did not file articles of dissolution, and did not inform Lake Express he had dissolved Smith Services. Yet, Smith continued to purchase fuel from Lake Express, under the guise of Smith Services, until 2005.

In 2006, Lake Express filed suit against Smith, Smith Services, and Smith Heating and Air Conditioning, LLC (Smith Heating), a company owned by Tony W. Smith, one of Smith's sons, seeking to collect the unpaid balance of the fuel account. By that time, however, Smith Services no longer had any assets. Months later, the Kentucky Secretary of State administratively dissolved Smith Services. Lake Express then amended its complaint to add claims of fraud in the inducement and by omission, and it sought to pierce the corporate veil of Smith Services as an alternate means of seeking liability against Smith, the sole shareholder of the dissolved Smith Services.

In October of 2007, Smith Heating moved to dismiss each of Lake Express's claims against it. Smith likewise moved to dismiss Lake Express's claims against him, including the claims of fraud and its action to pierce the corporate veil. The trial court, treating the motion as one for summary judgment, reviewed the evidence of record and dismissed Lake Express's claims against Smith Heating and Smith.

Lake Express appealed from the dismissal. On appeal, this Court affirmed the dismissal of the claims against Smith Heating. *Bear, Inc. v. Smith,* 303 S.W.3d 137, 147 (Ky.App.2010). Further, because Lake Express could not prove Smith had never intended to pay, we also affirmed dismissal of the fraud claims against Smith.

However, we reversed the trial court's dismissal and remanded for further proceedings regarding the issue of Smith's direct liability, if any, stating "Kentucky law allows a creditor who timely files its claim to proceed directly against a shareholder of a dissolved corporation to the extent of the corporate assets received by that shareholder...." *Id.* at 147. We held a genuine issue of material fact had been raised with respect to whether Smith had retained any assets of Smith Services for which he might be held individually liable, particularly because the 2003 tax return of Smith Services indicated shareholder loans totaling more than $173,000.00 were paid to Smith. We further held a genuine issue of material fact had been raised with respect to whether the corporate veil could be pierced. We noted evidence of abuse of the corporate form arising from Smith's admission that no shareholder meetings were held and no minutes of shareholder meetings were recorded or maintained. We further noted

Smith had admitted he received no salary, no dividends were paid, and any annual reports had since been lost. Finally, we noted Smith filed no annual reports for Smith Services, which ultimately led to its dissolution by the Secretary of State.

On remand to the trial court, Smith and Smith Services elected to proceed *pro se.* A jury trial was set for August 18, 2010. On August 3, 2010, Lake Express filed a motion for summary judgment on the issue of liability. On August 13, 2010, a hearing was held on the motion, but Smith failed to appear or file any responsive pleading. On August 17, 2010, the trial court granted summary judgment on the issue of liability in favor of Lake Express. Specifically, the trial court held Smith was liable for debts owed by Smith Services to Lake Express to the extent he received, but failed to repay, shareholder loans from Smith Services.

On the August 18, 2010, trial date, because summary judgment had been granted regarding Smith's equitable liability, a brief hearing was held to determine the amount of restitution owed. Jeff Ison, president of Lake Express, testified the accumulated balance and accrued interest owed to Lake Express totaled $90,863.22, and attorney fees and costs incurred from commencement of the action amounted to $42,330.38. In representing himself and Smith Services *pro se,* Smith offered no contrary evidence, called no witnesses to testify, and introduced no exhibits. Instead, even though the trial court explained liability had already been established by summary judgment, Smith's cross-examination of Ison continued to focus on the issue of liability.

On September 1, 2010, the trial court entered judgment in favor of Lake Express in the sum of $90,863.22, plus attorney fees in the sum of $42,330.38. This appeal followed.

## II. LEGAL ANALYSIS

On appeal, Smith argues the trial court erred: (1) by allowing the defendants to proceed *pro se;* (2) by granting summary judgment in favor of Lake Express; (3) by proceeding with a bench trial and disallowing him his constitutional right to a jury trial; and (4) in its award of damages.

### 1. *Pro Se* Representation.

■ First, Smith argues the trial court erred by allowing him to represent himself, individually, *and* Smith Services, the dissolved corporation for which he was the sole shareholder, *pro se.* Smith argues Smith Services, a separate legal entity, should have been represented by separate counsel. In essence, though he undertook to represent Smith Services *pro se,* Smith now argues Smith Services was unrepresented by counsel at trial and "easy prey for [Lake Express's] counsel." Yet, Smith apparently remained confident enough in his representation of Smith Services to file the Notice of Appeal, dated September 28, 2010, on behalf of both himself and Smith Services, prior to obtaining counsel.

Our former Court of Appeals has held "a corporation is an artificial person, not capable of performing any act except through the agency of others," and may not draw legal instruments or be represented in court through a nonprofessional officer or employee. *Kentucky State Bar Association v. Tussey,* 476 S.W.2d 177, 179 (Ky.1972) (citations omitted). Thus, to the extent Smith, a nonprofessional former shareholder of the administratively dissolved Smith Services, personally undertook to represent the defunct corporation, he is correct. It was improper for Smith to represent Smith Services in this action before the trial court. We are constrained, therefore, to reverse and remand the trial court's entry of summary judg-

ment on August 17, 2010, holding Smith Services liable to Lake Express, and it's entry of monetary judgment on August 31, 2010, against Smith Services. However, if upon remand Smith Services again fails to obtain legal counsel to appear, answer, and defend the claim filed against it by Lake Express, the derelict and defunct corporation would be subject to default proceedings. CR [3] 55.01.

Conversely, there is no reason to set aside the trial court's entry of summary judgment and its award of damages against Smith, individually. A corporation is ordinarily a legal entity, separate and apart from its stockholders; and, as duly noted in the brief filed on behalf of Smith and Smith Services, Smith Services was a Kentucky corporation with a separate legal existence from Smith. *Kentucky Electric Power Co. v. Norton Coal Mining, Co.*, 93 F.2d 923, 926 (C.C.A.6 Ky.1938). Thus, Smith, acting in his individual capacity, was not precluded from representing himself, and did so.

An individual may file and practice his own lawsuit in any court within the Commonwealth. If he elects to do so, he is bound by the same rules and procedures as a licensed lawyer. *Taylor v. Barlow*, 378 S.W.3d 322, 326 (Ky.App.2012); SCR [4] 3.020. Our Supreme Court has said:

> [o]nly persons who meet the educational and character requirements of this Court and who, by virtue of admission to the Bar, are officers of the Court and subject to discipline thereby, may practice law. The sole exception is the person acting in his own behalf.

*Frazee v. Citizens Fidelity Bank & Trust Co.*, 393 S.W.2d 778, 782 (Ky.1965). Moreover, there is no constitutional right to counsel in civil cases other than: (1)

those in which imprisonment is a potential punishment; or (2) in which an indigent inmate fails to defend a civil action brought against him. *May v. Coleman*, 945 S.W.2d 426, 427 (Ky.1997) (citing *Lewis v. Lewis*, 875 S.W.2d 862 (Ky.1993), and *Davidson v. Boggs*, 859 S.W.2d 662 (Ky. App.1993)). This civil case involves neither of those exceptions.

Though a degree of lenity is afforded *pro se* litigants and they are not strictly held to the same standard as legal counsel, *Beecham v. Commonwealth*, 657 S.W.2d 234, 236 (Ky.1983), the judiciary's conciliatory attitude is not boundless. *Cardwell v. Commonwealth*, 354 S.W.3d 582, 585 (Ky.App.2011). The right of self-representation is a right that when exercised usually increases the likelihood of a trial outcome unfavorable to the litigant exercising the right, *King v. Commonwealth*, 374 S.W.3d 281, 290 (Ky.2012) (citing *McKaskle v. Wiggins*, 465 U.S. 168, 177, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984)), and one who undertakes self-representation assumes "the dangers and disadvantages" thereof. *Id.*, at 292 (citations omitted). Proceeding *pro se* does not provide one with "a license not to comply with relevant rules of procedural and substantive law." *Faretta v. California*, 422 U.S. 806, 835 n. 46, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975). Thus, one who is ignorant and inexperienced regarding what is required by the substantive law and rules of procedure may unintentionally prove the veracity of the oft-quoted maxim, "a man who represents himself has a fool for a client and a fool for a lawyer." *Id.*, 422 U.S. 806, 852, 95 S.Ct. 2525, 2550, 45 L.Ed.2d 562 (1975) (dissenting opinion).

Smith exercised his right to represent himself in this civil matter. He proceeded

---

**3.** Kentucky Rules of Civil Procedure.

**4.** Rules of the Supreme Court.

*pro se,* without benefit of qualified legal counsel. In appealing the unfavorable summary and monetary judgments ultimately entered against him by the trial court, Smith's election precludes him from reasonably arguing the matter should be reversed merely because—in hindsight—he now realizes he lacked the requisite legal knowledge, skill, and experience of an attorney in presenting his defense. In this respect, Smith may have erred, but the trial court did not.

Having reversed and remanded the trial court's judgments pertaining to Smith Services due to its having allowed Smith to represent the corporation, we need not address the remaining issues *vis-à-vis* Smith Services. However, having held the trial court did not err in allowing Smith to proceed *pro se,* we address the remaining issues in relation to Smith, individually.

### 2. Summary Judgment on the Issue of Liability.

■ Smith next argues the trial court erred by granting summary judgment in favor of Lake Express against him, individually, on the issue of liability under the constructive trust doctrine set forth in *Reeves v. East Cairo Ferry Co.,* 289 Ky. 384, 158 S.W.2d 937, 938 (1942), and *Bear,* 303 S.W.3d at 146. However, Lake Express's motion for summary judgment had urged the trial court to hold Smith personally liable for payment of the unpaid fuel balance incurred by Smith Services to the extent of any payments or unpaid loans made to Smith as sole shareholder of Smith Services.

When reviewing a trial court's grant of summary judgment, appellate courts must ascertain whether the trial court properly determined there were no genuine issues of material fact and the movant was entitled to judgment as a matter of law. *Scifres v. Kraft,* 916 S.W.2d 779, 781 (Ky.

App.1996). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56.03. We make this inquiry *de novo. Blevins v. Moran,* 12 S.W.3d 698, 700 (Ky.App.2000).

In reviewing a trial court's factual findings, appellate courts are governed by the rule that such determinations shall not be set aside unless clearly erroneous. CR 59.01. A factual finding is not clearly erroneous if it is supported by substantial evidence. *Owens–Corning Fiberglas Corp. v. Golightly,* 976 S.W.2d 409, 414 (Ky.1998). "Substantial evidence" is evidence which, when taken alone or in light of all the evidence, has sufficient probative value to induce conviction in the mind of a reasonable person. *Id.* (citing *Kentucky State Racing Commission v. Fuller,* 481 S.W.2d 298, 308 (Ky.1972); *Smyzer v. B.F. Goodrich Chemical Co.,* 474 S.W.2d 367 (Ky.1971); *O'Nan v. Ecklar Moore Express, Inc.,* 339 S.W.2d 466 (Ky.1960)).

In its August 17, 2010, summary judgment, the trial court ruled in favor of Lake Express, and determined Smith—along with Smith Services—was liable "for the amount of indebtedness owed ... under the charge account at issue with interest, costs, and attorney fees, all of which shall be adjudicated along with any remaining claims ... at the trial." In its August 31, 2010, judgment, the trial court likewise found evidence warranted setting aside Smith Services' corporate form and holding Smith, the sole shareholder, personally liable for the corporate fuel debt owed to Lake Express. In essence, the trial court's judgments indicated it had found substantial evidence that Smith had disregarded and abused the corporate form,

leaving Smith Services incapable of repaying its fuel charges, undermining Lake Express's ability to seek legal recourse, and permitting the lifting of the corporate veil in regard to Smith's personal liability for the debt. In holding that the trial court had previously erred by rendering summary judgment in favor of Smith as to his personal liability, the prior panel of this Court extensively noted these very matters. *See Bear,* 303 S.W.3d at 146–49.

The record of evidence indicates Smith admitted no shareholder meetings were held, no minutes of shareholder meetings were recorded or maintained, no corporate dividends or distributions were paid to Smith as the sole shareholder, and no annual reports could be produced. Smith claimed to have drawn no salary and denied paying himself at will through corporate funds. However, the 2003 tax return filed for Smith Services—the corporation's last—established Smith had received "shareholder loans"—that is, corporate assets—in the amount of $173,434.00. Smith could produce no promissory notes or agreements memorializing these loans and professed no memory of signing such documents or their specific terms. Moreover, Smith produced no evidence demonstrating he had repaid these loans, in whole or in part, or intended to do so. Though contending some payments may have represented reimbursement for services rendered to the corporation rather than loans, Smith produced no documentation of such services.

■ Based on the foregoing, even when viewing the evidence in a light most favorable to Smith, there is no genuine issue of material fact with respect to whether Smith received assets of the corporation, nor that Smith Services was administratively dissolved. Generally, when a shareholder receives assets of a corporation that dissolves, such assets are held in trust for the corporation's creditors, and the shareholder remains personally liable for the corporate debt to the extent of the value of the corporate property received. *Reeves,* 158 S.W.2d at 938; *Bear,* 303 S.W.3d at 146.

Here, uncontroverted evidence demonstrated Smith received corporate assets prior to the dissolution of Smith Services, that a constructive trust was thereby established, and—as a matter of law—Smith was liable to Lake Express, a creditor of Smith Services, to the extent of the value of the corporate assets he received and failed to repay. Thus, the trial court did not err in granting summary judgment against Smith relative to his liability for the unpaid fuel debt Smith Services owed Lake Express.

### 3. Right to a Jury Trial.

■ Smith next argues the trial court erred when it denied his request for a jury trial. Having determined the trial court did not err in granting summary judgment against Smith regarding the issue of liability, we focus now on whether it erred in addressing the remaining issue of monetary damages in a bench trial.

Lake Express did not request a jury trial in its complaint. However, Smith did request a jury trial in the answer filed on his behalf and that of Smith Services.

■ Generally, "once a proper demand for a jury trial has been made, the trial *shall* be by jury *unless* there is either a written stipulation filed with the court, or an oral stipulation of waiver made in open court." *Hazard Coal Corp. v. Knight,* 325 S.W.3d 290, 296 (Ky.2010) (emphasis in original); *See also* CR 39.01. However, jury trials are only a constitutional right when the issues are at law, rather than in equity. *Daniels v. CDB Bell, LLC,* 300 S.W.3d 204 (Ky.App.2009).

Our Supreme Court has held "equitable issues are not triable by juries unless agreed to by the parties." *Schultz v. General Elec. Healthcare Financial Services, Inc.,* 360 S.W.3d 171, 175 (Ky.2012). In Kentucky, imposition of a constructive trust is an exercise of a court's equitable power. *Peter v. Gibson,* 336 S.W.3d 2 (Ky.2010).

■■■■ Restitution is a legal remedy when ordered in a case at law and an equitable remedy when ordered in an equity case, and whether the award of damages is legal or equitable depends on the basis for the plaintiff's claim and the nature of the underlying remedies sought. *Great–West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204, 213, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002) (citing *Reich v. Continental Casualty Co.,* 33 F.3d 754, 756 (7th Cir.1994)). While the issue of money damages is not typically considered equitable relief, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession—such as in the form of a constructive trust or an equitable lien—a plaintiff could seek "restitution in equity" rather than compensatory damages in law. In that circumstance, a court of equity could then order a defendant to pay, transfer, or give a security interest to a plaintiff who was, in the eyes of equity, the true owner. *Id.,* at 213–14, 122 S.Ct. 708 (citations omitted).

Here, because the trial court found Smith held funds received from Smith Services in a constructive trust for Lake Express—the creditor of the defunct corporation—the matter of restitution was equitable in nature. Accordingly, contrary to Smith's request that a jury be empanelled, the amount of restitution due Lake Express under the equitable principles of the constructive trust was the proper subject of a bench trial, with no right to a jury trial arising. Thus, we find no error in the trial court's decision to conduct a bench trial regarding the limited issue of the amount Smith owed Lake Express under the equitable constructive trust.

We further note that even if a jury had been empanelled and found in favor of Smith, a judgment notwithstanding the verdict would have been required. Smith presented no evidence during the bench trial to contradict the restitution amounts and attorney fees claimed and proved by Lake Express. Instead, contrary to the trial court's guidance, Smith persisted in focusing on the issue of liability, which had already been determined· by summary judgment. Our Supreme Court has held:

> where the record shows, as it does here, that only one fair and reasonable conclusion can be drawn from the evidence, the case should not be submitted to the jury.

*Crest Coal Co., Inc. v. Bailey,* 602 S.W.2d 425, 427 (Ky.1980) (internal citations omitted).

Though not dispositive of our determination that the trial court committed no error in convening a bench trial regarding the sole issue of equitable restitution, we draw further support for our holding in the fact that—after requesting a jury trial—Smith failed to pay any jury fee as mandated by CR 3.02, and failed to comply with the trial court's pretrial order requiring submission of proposed jury instructions at least seven days prior to the trial date. Smith's failures lend credence to the argument that he thereby waived any right to a jury trial. Here, Lake Express filed proposed jury instructions as ordered, but subsequently and correctly argued no jury trial was necessary given the only remaining issue concerned equitable damages.

### 4. Award of Restitution and Attorney Fees.

Smith's last argument is that the trial court erred in imposing the amount of monetary restitution, together with the attorney fees and costs, as set forth in its August 31, 2010, judgment. Lake Express presented testimony from its president, Ison, to prove an accumulated balance and accrued interest in the amount of $90,863.22, together with incurred attorney fees and costs in the amount of $42,330.38. Smith called no witnesses, introduced no exhibits, engaged in no cross-examination, and otherwise produced no proof to dispute Ison's testimony regarding the debt's existence, the unpaid amounts owed on the fuel account, the assessment or computation of interest, or the amount of attorney fees and costs incurred by Lake Express to collect the debt. Though this Court's prior opinion noted the 2003 tax return filed by Smith Services had established shareholder loans to Smith in the amount of $173,434.00, on remand Smith presented no evidence proving his repayment of these shareholder loans "other than a $500 payment in July of 2002 and some modest credits for service work performed by Smith Services," as acknowledged by the trial court in its August 31, 2010, judgment. Thus, based on the uncontroverted evidence, the trial court did not err in its award of monetary restitution, including interest, together with attorney fees and costs, under principles of equity.

Though we are reversing and remanding the trial court's judgments against Smith Services—due to the corporation's not having been represented by counsel—the judgments entered against Smith, individually, remains intact. The trial court's summary judgment of August 17, 2010, established Smith's equitable liability, and we have now affirmed that ruling. With the lifting of the corporate veil evinced in the trial court's grant of summary judgment, Smith had notice that he would be held liable to Lake Express for any amounts owed by Smith Services—up to any unrepaid amount of the $173,434.00 in shareholder loans he had received from the administratively dissolved Smith Services. Because Smith presented no evidence to establish his repayment of the shareholder loans, the trial court was free to conclude Smith held $173,434.00 in constructive trust from which restitution was owed to Lake Express. Smith provided the trial court no evidence to support any award other than that which it reasonably made, and he cannot now fairly and logically argue the amounts set forth in the trial court's monetary judgment regarding his equitable liability were determined in error.

We now turn to the question of costs and attorney fees. In Kentucky, attorney fees "are not allowable as costs in absence of statute or contract expressly providing therefore." *Kentucky State Bank v. AG Services, Inc.*, 663 S.W.2d 754, 755 (Ky.App.1984) (citing *Holsclaw v. Stephens*, 507 S.W.2d 462 (Ky.1973); *Dulworth & Burress Tobacco Warehouse Company, Inc. v. Burress*, 369 S.W.2d 129 (Ky.1963)). However, this "American Rule" does not abolish the equitable rule that "an award of counsel fees is within the discretion of the court depending on the circumstances of each particular case." *Id.* (citing *Dorman v. Baumlisberger*, 271 Ky. 806, 113 S.W.2d 432 (1938)). In the present case, the trial court, in its discretion, found that attorney fees were appropriate, and we will not disturb that finding.

When reviewing the equitable award of attorneys' fees, we give considerable deference to the trial court and will not reverse absent a finding that the award was "arbitrary, unreasonable, unfair, or unsupported by sound legal princi-

ples." *Commonwealth v. English,* 993 S.W.2d 941, 945 (Ky.1999). In the present case, we discern no abuse.

■ Under CR 76.12(4)(c)(iv), a party must cite to whether, where, and how an issue was preserved at the trial level so as to allow for appellate review. *Skaggs v. Assad, By and Through Assad,* 712 S.W.2d 947, 950 (Ky.1986). Matters not precisely raised or adjudicated before the trial court cannot be considered when raised for the first time on appeal. *Fischer v. Fischer,* 197 S.W.3d 98, 102 (Ky.2006); *Combs v. Knott County Fiscal Court,* 283 Ky. 456, 141 S.W.2d 859, 860 (1940). A trial court must be given the opportunity to rule in order for an issue to be preserved for appellate review. *See Grundy v. Commonwealth,* 25 S.W.3d 76, 84 (Ky.2000); *Shelton v. Commonwealth,* 992 S.W.2d 849, 852 (Ky.App.1998). Our courts have stated on numerous occasions, "appellants will not be permitted to feed one can of worms to the trial judge and another to the appellate court." *Elery v. Commonwealth,* 368 S.W.3d 78, 97 (Ky.2012) (citing *Kennedy v. Commonwealth,* 544 S.W.2d 219, 222 (Ky. 1976), overruled on other grounds by *Wilburn v. Commonwealth,* 312 S.W.3d 321 (Ky.2010)).

Before the trial court, Smith failed to object to introduction of evidence—and any award—of attorney fees and costs, and failed to submit rebuttal evidence regarding the amount or reasonableness of these incurred expenses claimed and proved by Lake Express. However, Lake Express introduced the testimony of its president, Ison, to prove the $42,330.38 amount it claimed to have incurred for attorney fees and costs since the inception of litigation. Noting the long and contentious four-year course of the litigation, which included a previous appellate trek to our Court, the trial court concluded the expenses claimed and proved by Lake Express were reason-

able and a natural and foreseeable outcome of the conduct of Smith and Smith Services and their failure to pay the fuel account. By failing to make a timely objection and by failing to offer rebuttal evidence before the trial court, Smith failed to preserve the issue for appellate review. Thus, we are constrained from holding the trial court erred in its award of attorney fees and costs to Lake Express.

In light of the foregoing, we affirm the trial court's resolution of the claims against Smith in his individual capacity, but reverse and remand the grant of summary judgment against Smith Services due to its representation by a nonprofessional former shareholder.

ALL CONCUR.

