RENDERED: SEPTEMBER 30, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-1108-MR

EUGENE SISCO, III                                                                    APPELLANT

APPEAL FROM PIKE CIRCUIT COURT
v.          HONORABLE JOHN DAVID PRESTON, SPECIAL JUDGE
ACTION NO. 17-CI-00782

ALEXANDRIA ALLEN AND
EUGENE SISCO, JR.                                                                    APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CLAYTON, CHIEF JUDGE; CETRULO AND K. THOMPSON, JUDGES.

CETRULO, JUDGE: Appellant Eugene Sisco, III ("Sisco III") appeals two orders

granting partial summary judgments to Appellee Alexandria Allen ("Allen"); one

order granting partial summary judgment to Appellee Eugene Sisco, Jr. ("Sisco,

Jr."); orders scheduling a bench trial then rescheduling it via Zoom; the trial

court's July 2021 judgment, amended August 2021; and orders denying his motions to alter, amend, or vacate all the above.

## FACTS AND PROCEDURAL HISTORY

In August 2013, Sisco III and his sister, Allen, bought Alcohol and Substance Abuse Professionals, LLC ("ASAP") from their father, Sisco, Jr. Sisco III, Allen, and Sisco, Jr. entered a contract at that time that detailed the specifics of the transaction ("Purchase Agreement"). The Purchase Agreement outlined the per patient royalties Allen and Sisco III owed to Sisco, Jr. for each person enrolled in the clinic that was transferred, as well as Allen and Sisco III's responsibility to pay 50% of Sisco, Jr.'s federal tax liability for 2010 and 2011. Those provisions were later clarified in an Addendum.

In May 2014, Allen and Sisco III entered into a contract detailing the ownership structure and management of ASAP ("Operating Agreement"). The Operating Agreement stated that Allen and Sisco III were the only members and co-owners of ASAP, each owning 50% of its shares. It described ASAP's business services as "the business of providing substance abuse education and prevention; drug testing services; and medical assisted treatment." Further, the Operating Agreement stated that Allen and Sisco III could alter or change the contract only when in writing, signed or initialed by the parties, and made part of the main body of the contract.

In November 2014, Allen and Sisco III reconfigured the services ASAP offered into four separate business entities, with ASAP serving as the managing entity: ASAP Addiction Treatment, LLC; ASAP Outpatient & Residential Services, LLC; ASAP Behavioral Health, LLC; and ASAP Labs, LLC. ASAP Labs, LLC ("ASAP Labs") was the arm that handled the drug testing service. Initially, ASAP Labs identified its members/managers as Sisco III and Allen; however, a year after its formation, ASAP Addiction Treatment, LLC was also listed as a manager.

Around the time that Allen and Sisco III reconfigured ASAP, Sisco III created another entity, Toxperts, LLC, and listed ASAP Addiction Treatment, LLC as the responsible party for forming that new company. In March 2016, Sisco III unilaterally changed the name of ASAP Labs to Toxperts, LLC. Then, in July 2017, Sisco III filed an Annual Report for Toxperts, LLC – formerly ASAP Labs (referred to hereinafter as ASAP Labs/Toxperts, LLC) – and identified himself as the sole member/manager.

Additionally, a few months after Allen and Sisco III purchased ASAP, Sisco III created multiple business entities solely owned by him that performed virtually the same services as ASAP and its eventual subsidiaries (the "mirror entities"). Sisco III testified during his deposition that he did not obtain Allen's consent to operate competing companies and did not communicate to her that he

-3-

planned to open a competing business. He further explained that there were "not a lot of differences" between the services his mirror entities offered and those that ASAP offered. Sisco III's mirror entities utilized some of the same employees, physicians, and vendors that were concurrently working at ASAP, and Sisco III agreed that patients could receive the same services at both groups of entities. Sisco III also used ASAP money to pay some operational costs of his mirror entities.

In early 2017, Allen began requesting ASAP accounting documents from Sisco III, which he failed to provide. After a few months of these unsuccessful requests and Allen's counsel threatening to file suit to get the documents, Sisco III filed a complaint against Allen. He alleged that she breached the Operating Agreement by failing to maintain a daily schedule; breached her fiduciary duty by failing to abide by the operating agreements[1] and disparaging the ASAP entities and Sisco III; and failed to properly maintain business records and financial information for the jointly owned ASAP entities. Sisco III asserted that he suffered damages based on Allen's alleged actions or inactions, and he requested a trial by jury on such issues. Further, he requested dissolution of the jointly owned ASAP entities.

---

[1] Sisco III alleged that there were multiple written and unwritten operating agreements for the various entities. In Allen's answer, however, she denied the existence of any agreements aside from the Operating Agreement and nothing in the record shows that they exist.

-4-

The next month, Allen filed her answer and counterclaim, in which she asserted that Sisco III breached the Operating Agreement by unilaterally making decisions for ASAP and failing to abide by multiple provisions, including those regarding bi-annual meetings, salary payment, and dividend distributions; and that he breached his fiduciary duty to the jointly held ASAP entities by failing to act with honesty, loyalty, and good faith. She also sought dissolution of the ASAP entities. For the next few months, the parties conducted discovery, each filing multiple motions to compel.

In March 2018, Allen filed a motion for partial summary judgment on the issue of whether she owned 50% of ASAP; ASAP Addiction Treatment, LLC; ASAP Labs/Toxperts, LLC; ASAP Outpatient & Residential Services, LLC; and ASAP Behavioral Health, LLC.

Sisco III responded the next month, claiming that summary judgment was premature because they had been conducting discovery for only ten months. Nevertheless, he conceded that Allen owned 50% of ASAP; ASAP Addiction Treatment, LLC; ASAP Outpatient & Residential Services, LLC; and ASAP Behavioral Health, LLC. However, the parties disagreed on ownership of ASAP Labs/Toxperts, LLC: Sisco III claimed sole ownership of ASAP Labs/Toxperts, LLC and alleged that he and Allen had negotiated to give Allen no ownership

interest of the entity and only 10% royalty of gross billings. Allen denied such a negotiation took place.

In April 2018, Sisco, Jr. moved to intervene, claiming, in pertinent part, that Sisco III and Allen violated the Purchase Agreement and that Sisco III breached his duty of good faith and fair dealing because he failed to pay Sisco, Jr. the per patient royalties due and the monthly installments for the federal income liability.

In August 2018, the trial court heard all pertinent motions and in September 2018, overruled Allen's partial motion for summary judgment; however, it permitted her to refile the motion after the parties completed their depositions. Following the depositions, Allen filed a renewed motion for partial summary judgment regarding her 50% ownership interest in ASAP Labs/Toxperts, LLC. Additionally, in early 2019, Allen filed a motion for partial summary judgment regarding her claim that Sisco III breached his fiduciary duty to her.

Similarly, Sisco, Jr. moved for partial summary judgment as to Sisco III's breach of the Purchase Agreement and Sisco III's breach of his duty of good faith and fair dealing.

In September 2019, the trial court scheduled a jury trial on the remaining matters, to be held in January 2020. Then, in November 2019, the trial court granted Allen's motions: one order granted partial summary judgment as to

-6-

her 50% ownership interest in ASAP Labs/Toxperts, LLC and the other granted partial summary judgment as to Sisco III's breach of fiduciary duty to Allen. Later that month, Sisco III filed a motion to alter, amend, or vacate those orders because neither one contained findings of fact and conclusions of law.

Then, in December 2019, the trial court entered an order granting Sisco, Jr.'s partial summary judgment, and Sisco III moved to alter, amend, or vacate that order, again citing the trial court's failure to include findings of fact and conclusions of law. Additionally, Sisco III filed his first motion to continue the January 2020 trial.

At a January hearing on all open motions, all parties agreed that findings of fact and conclusions of law were required for such orders. Accordingly, Allen and Sisco, Jr. submitted findings of fact and conclusions of law for each of their respective partial summary judgment orders. Both of Allen's proposed findings of fact and conclusions of law contained a clause that stated the court would conduct a bench trial on June 22, 2020, limited to the sole issue of damages.

In February 2020 and March 2020, the trial court entered Sisco, Jr.'s and Allen's submitted findings of fact, conclusions of law, and corresponding orders. After those orders were entered, Sisco III filed motions to alter, amend, or vacate each of the submitted findings of fact and conclusions of law, as well as the

corresponding orders, because he argued there were inaccuracies contained therein.[2]  He did not, however, provide any objections to the conclusion that a bench trial would take place on the sole issue of damages on June 22, 2020.

Shortly before that trial date, Sisco III filed his second motion to continue the trial, citing his medical instability and inability to sit through a trial. At a July 2020 hearing, the trial court heard arguments regarding the bench trial and ordered that a Zoom bench trial be set for August 17 and August 19, 2020 due to COVID-19 concerns.  In Sisco III's response, he objected to the trial court holding the bench trial via Zoom; however, he stated that he did "not object to the Court scheduling a case for bench trial on all remaining issues, including the original claim and the counterclaim to the intervening complaint."  Shortly before that trial date, Sisco III again moved for a continuance.  Again, the trial court granted it.

In January 2021, the trial court scheduled the bench trial on damages to be held in March 2021, via Zoom.  The day after the pre-trial conference, Sisco III filed his fourth motion to continue the trial, citing the birth of his child occurring on the trial date.  Again, the trial court granted the continuance.

---

[2] At that time, Sisco III also appealed those orders and the order scheduling a bench trial.  This Court, in a November 2020 order, dismissed those appeals and ruled that partial summary judgments, limited solely to the issue of liability, and an order scheduling a bench trial were not final and appealable orders until the trial court ruled on damages at the trial.

Finally, on July 7, 2021, the trial court conducted the bench trial on damages in person, where Sisco III was present with counsel and counsel for Allen and Sisco, Jr. were present. Each party presented financial expert testimony to detail the ASAP entity valuations and monies owed to the respective parties. As a preliminary matter, Sisco III's counsel moved under CR[3] 60.02 to challenge Allen's 50% ownership interest of ASAP. Allen's counsel responded, citing untimeliness, hearsay, and statute of frauds. The trial court denied Sisco III's motion.

Sisco, Jr.'s counsel then presented her motion *in limine* to limit the expert's testimony during the bench trial. Sisco III's counsel stated that he had never seen such a motion during a trial without a jury, but had no issue with the request. The trial court granted the motion *in limine*. Again, importantly, Sisco III did not object to the bench trial and during the bench trial, Sisco III represented to the trial court that he did not intend to make any further claims in the case and that all issues had been submitted to the court.

In July 2021, the trial court's findings of fact, conclusions of law, and judgment awarded damages to Sisco, Jr. for past due tax and royalty payments; damages to Allen for 50% of the profits of ASAP Labs/Toxperts, LLC and 50% of the profits of Sisco III's mirror entities; and determined the best manner of

---

[3] Kentucky Rule of Civil Procedure.

dissolution of the entities was to give ASAP Labs/Toxperts, LLC to Sisco III, and to give Allen the remaining ASAP companies. Further, the trial court dissolved the business relationship between Allen and Sisco III, concluding that Sisco III did not intend to pursue his claims against Allen. Lastly, the trial court dismissed Sisco III's complaint against Allen with prejudice.

Sisco III filed a motion to alter, amend, or vacate that July 2021 judgment, arguing the partial summary judgments should not have been granted the year before because there were genuine issues of material fact, and that his initial claims should have been tried by a jury. In August 2021, the trial court amended the July 2021 judgment to clarify that Sisco III had stated he did not intend to make any further claims in the case, and thus the court dismissed Sisco III's counterclaim against Sisco, Jr. with prejudice. The trial court denied all other motions.

Sisco III now appeals the orders granting partial summary judgments to Allen and Sisco, Jr.; the orders scheduling the bench trial then rescheduling it via Zoom; the trial court's July 2021 judgment, amended August 2021; and the orders denying his motions to alter, amend, or vacate those orders. First, Sisco III broadly appeals all orders and claims that holding a bench trial violated his due process rights. Second, he specifically argues that the order granting partial

-10-

summary judgment as to Allen's 50% ownership interest in ASAP Labs/Toxperts, LLC ignored genuine issues of material fact.

## STANDARD OF REVIEW

"The proper standard of review on appeal when a trial judge has granted a motion for summary judgment is whether the record, when examined in its entirety, shows there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law." *Stilger v. Flint*, 391 S.W.3d 751, 753 (Ky. 2013) (quoting *Hammons v. Hammons*, 327 S.W.3d 444, 448 (Ky. 2010)). "In such cases, this Court reviews the issue *de novo*." *Id.* (citation omitted).

## ANALYSIS

Sisco III first argues that the trial court erred by ordering a bench trial solely on the issue of damages when he claims there was no adjudication of the remaining issues[4] raised in his original complaint. Specifically, he argues that a jury should have heard the issues he presented; therefore, he argues his due process rights were violated. Next, Sisco III argues that the trial court erred when it granted partial summary judgment finding Allen was a 50% owner of ASAP

---

[4] Sisco III specifically argues that the trial court did not adjudicate his claims of tortious interference against Sisco, Jr.; unjust enrichment; fraudulent inducement; and breach of fiduciary duty against Allen.

-11-

Labs/Toxperts, LLC. Sisco III claims that there were questions of fact that a jury should have determined.[5]

### A. Due Process

First, Sisco III states that in January 2020, the trial court rescheduled the jury trial to a bench trial – following his motion for a continuance – "with no mention of limiting the issues or the presence or absence of a jury." Although the specific argument Sisco III is trying to make is not clear, it appears he is claiming that because the trial court changed the trial from a jury trial to a bench trial, "the trial court violated his due process rights." Although the January 2020 order did not contain a discussion of the reasons for the change, the March 2020 order, incorporating Allen's findings of fact and conclusions of law, did. The March 2020 order stated that the trial court would "conduct a bench trial limited to the sole issue of damages on June 22, 2020." Further, it explained that pursuant to CR 56.03,

> summary judgment may be rendered on the issue of
> liability alone, and if there remains a genuine issue as to
> the amount of damages owed, it is an interlocutory order.
> This Court finds that there is a question of fact as to the
> proper amount of damages due . . . and that sole issue

---

[5] Allen urges this Court to strike Sisco III's brief under CR 76.12(8)(a) or, in the alternative, to review the issues raised for manifest injustice only. However, as Allen recognized, appellate courts have a third option: "to ignore the deficiency and proceed with the review . . . ." *See Hallis v. Hallis*, 328 S.W.3d 694, 696 (Ky. App. 2010) (citing *Elwell v. Stone*, 799 S.W.2d 46, 47 (Ky. App. 1990)). While we agree that Sisco III's brief is lacking clarity and form, we will review the issues that were properly presented.

must be reserved for trial because it requires this Court to make factual determinations.

While it is true that "once a proper demand for a jury trial has been made, the trial *shall* be by jury *unless* there is . . . a written stipulation filed with the court[,]"[6] Sisco III made such a stipulation here.  After the trial court scheduled the bench trial, Sisco III filed his written response with the court stating that he did "not object to the Court scheduling a case for bench trial on all remaining issues, including the original claim and the counterclaim to the intervening complaint." At that point, Sisco III objected *solely* to the trial court holding the bench trial via Zoom.  As the bench trial was held in person – *not* via Zoom – and Sisco III consented to such proceedings, the trial court did not violate his due process rights.

Further, the trial court specifically noted that after discussions with counsel following the trial, Sisco III did not intend to make any further claims in the case, other than regarding the decision that he receive the ASAP Labs/Toxperts, LLC.[7]  Importantly, the trial court concluded that as Sisco III did not intend to pursue his claims against Allen or Sisco, Jr., the complaints against both were dismissed with prejudice.  Although Sisco III argues the issues in his

---

[6] *Smith v. Bear, Inc.*, 419 S.W.3d 49, 57 (Ky. App. 2013) (quoting *Hazard Coal Corp. v. Knight*, 325 S.W.3d 290, 296 (Ky. 2010) (citing CR 39.01)).

[7] While the trial court found that Allen was a 50% owner of ASAP Labs/Toxperts, LLC for purposes of damages Sisco III owed to her, the trial court awarded Sisco III the entity for dissolution purposes.

complaints were not adjudicated, the trial court clearly dismissed them in its July 2021 judgment, amended August 2021 – *i.e.*, the trial court adjudicated those claims. CR 41.02(3) states, in pertinent part, that "[u]nless the court in its order for dismissal otherwise specifies, a dismissal under this Rule, . . . operates as an adjudication upon the merits." Under Kentucky law, the trial court thereby adjudicated those claims, and Sisco III's argument that such claims were not adjudicated is baseless.

### B.    Partial Summary Judgment

Second, Sisco III argues that the trial court improperly granted partial summary judgment regarding Allen's 50% interest in ASAP Labs/Toxperts, LLC, claiming that there was "overwhelming evidence that Allen only received a ten percent gross profit of the company."[8] Specifically, he claims there are three[9] genuine issues of material fact: (1) whether Allen ever had an ownership interest in ASAP Labs/Toxperts, LLC; (2) if she did have an ownership interest, what the

---

[8] Although Sisco III's brief quickly refers to the partial summary judgment regarding his breach of fiduciary duty to Allen, the body of his argument does not reference such order and instead focuses entirely on the order granting Allen's 50% ownership of ASAP Labs/Toxperts, LLC. As no argument was presented regarding the fiduciary duty summary judgment, we have nothing to address on that matter. *Jones by and through Jones v. IC Bus, LLC*, 626 S.W.3d 661, 686 (Ky. App. 2020) (citation omitted) ("It is not our function as an appellate court to research and construct a party's legal arguments.").

[9] Sisco III claimed a fourth genuine issue of material fact – whether Allen made a false sworn statement to the trial court regarding her alleged interest in ASAP Labs/Toxperts, LLC; however, that issue was not adjudicated in the orders Sisco III appealed and is not properly before this Court.

interest was; and (3) whether Allen agreed by her words, actions, and course of conduct, to receive the 10% gross royalty payment. We find none of these claims to be persuasive.

As to his first two claims, ASAP's Operating Agreement provided that Allen and Sisco III were the only co-owners and each owned 50% of the shares. Additionally, the Secretary of State filings for ASAP Labs/Toxperts, LLC – which was derived from ASAP – listed Allen as the co-owner until the week before Sisco III filed suit against her, at which point, he had listed himself as the sole owner. Additionally, Sisco III claimed during his deposition that Allen had executed a written agreement *modifying* her compensation from a 50% interest to a 10% interest; thereby agreeing that Allen had at least at one point had a 50% interest in ASAP Labs/Toxperts, LLC. Based on these facts, there was no question that Allen at some point had a 50% interest in ASAP Labs/Toxperts, LLC, and there were no genuine issues of fact regarding the same. Therefore, the only question left was whether Allen amended that 50% ownership interest.

Sisco III claims that she did. However, he admitted that there is not an executed copy of the alleged amended contract and that he could not find a signed copy of such agreement "anywhere on planet Earth." Instead, Sisco III attempted to prove such "amendment" by referencing text messages between him and Allen, none of which detailed any such agreement. Even if the text messages

did allude to an amendment, as Allen emphasized, vague text messages did not meet the parameters to validate a modification under the Operating Agreement. The Operating Agreement required any modification to be made in writing, signed by the parties, and incorporated into the body of the Operating Agreement. Sisco III failed to provide adequate evidence that any of those steps were taken, much less all three.

Further, Allen explains that any such amendment, under Kentucky law, would need to be made with due consideration. *Vinaird v. Bodkin's Adm'x*, 254 Ky. 841, 72 S.W.2d 707, 711 (1934) (citation omitted) ("[G]enerally a new consideration is required in order for an attempted modification for a contract to be valid."). As discussed, Sisco III provided no evidence – other than his insistence – that there was a written contract detailing the alleged amendment or that there was sufficient consideration for Allen to agree to less than 50% of the company. As such, there was no genuine issue of material fact regarding Allen's alleged amendment of her 50% ownership interest in ASAP Labs/Toxperts, LLC, and the trial court did not err when it granted summary judgment on the matter.

Lastly, reiterating his claims from his third motion to alter, amend, or vacate the order granting summary judgment, Sisco III argues that the March 2020 order, findings of fact, and conclusions of law contained "several factual errors that have never been addressed and/or corrected by the Court."

Factual findings are reviewed for clear error, and "due regard shall be given the opportunity of the trial court that judges credibility of the witnesses." CR 52.01. As such, we will not disturb the trial court's findings of fact if supported by substantial evidence. *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003) (citation omitted). "'Substantial evidence' is 'evidence that a reasonable mind would accept as adequate to support a conclusion' and evidence that, when 'taken alone or in the light of all the evidence, . . . has sufficient probative value to induce conviction in the minds of reasonable men.'" *Id.* (citations omitted). "Finally, if the trial court committed error, we must determine whether that error was harmless. The standard for reviewing non-constitutional evidentiary errors is whether 'the reviewing court can say with fair assurance that the judgment was not substantially swayed by the error.'" *Oliphant v. Ries*, 460 S.W.3d 889, 897 (Ky. 2015) (quoting *Hashmi v. Kelly*, 379 S.W.3d 108, 115 (Ky. 2012)).

First, he takes issue with paragraph four of the March 2020 order, which stated, "[i]t is undisputed drug testing services were already being performed and provided patients at the time ASAP was purchased [sic]." Sisco III argues that the statement is inaccurate because the *types* of drug testing conducted by the entities were different. However, it is undisputed that the Purchase Agreement and Operating Agreement both reference ASAP's "drug testing services."

-17-

Sisco III instead emphasizes that at the time they purchased ASAP, the company was using a different, less complex type of drug testing. Sisco III argues that the urine-testing cup procedures that ASAP originally conducted were different from those ASAP Labs/Toxperts, LLC conducted. While that may be true, it does not make the trial court's statement that ASAP had always provided "drug testing services" inaccurate. In fact, Sisco III's acknowledgment that ASAP conducted urine tests that detected drugs further supports the trial court's statement. The evolution of the laboratory capabilities does not change that fact. Therefore, there is substantial evidence in the record to indicate that ASAP provided "drug testing services," and it was not clearly erroneous for the trial court to state the same.[10]

Second, Sisco III claims paragraph 13 of the March 2020 order was inaccurate: that Sisco III paid for the equipment for drug testing and services and payroll out of the joint banking account for all other ASAP businesses ("ASAP general fund"). Sisco III argues that the record showed the equipment leases for drug testing equipment were paid out of the ASAP Labs/Toxperts, LLC account. We agree. The leases listed ASAP Labs/Toxperts, LLC as the responsible party,

[10] Sisco III also claims that the trial court "cited certain numbers or amounts of money on pages five and six of the Order that are not even in the record and are likely inaccurate." Sisco III fails to provide any additional information as to which specific numbers or amounts he disagrees with and the reasons they "are likely inaccurate." As discussed, it is not this Court's duty to conduct the research and supply arguments for a party. *Jones*, 626 S.W.3d at 686. Again, we have nothing to consider for this claim.

and the account documents for ASAP Labs/Toxperts, LLC indicated that the lease payments were made from that account, not the ASAP general fund. Further, during Sisco III's deposition, Allen's counsel specifically asked whether he used the ASAP general fund to pay for ASAP Labs/Toxperts, LLC expenses and he admitted that he did for "employee costs" and the payroll; however, he was clear that the lab testing equipment expenses came out of the ASAP Labs/Toxperts, LLC account. As such, there was not substantial evidence provided to show that Sisco III used the ASAP general fund to pay for testing equipment and therefore this finding was clearly erroneous.

Therefore, our question becomes whether the error was harmless. Despite Sisco III's claim that the ASAP general fund did not pay for the testing equipment, he did admit that he paid the payroll for ASAP Labs/Toxperts, LLC using the ASAP general fund. Sisco III testified at his deposition that "[ASAP Labs/Toxperts, LLC] employees . . . are paid from the ASAP general fund . . . because ASAP was managing employees for [ASAP Labs/Toxperts, LLC]." Importantly, this finding of fact detailed the interwoven nature of the entities.

Although the record did not suggest that Sisco III used ASAP accounts to pay for the equipment leases, it is undisputed that Sisco III used ASAP accounts to pay other expenses for ASAP Labs/Toxperts, LLC. Even though the "equipment" portion of the statement was inaccurate, it did not impact or negate

-19-

the truthfulness of the remainder of the statement and did not materially affect the conclusions. Sisco III's use of jointly held ASAP accounts to pay expenses for ASAP Labs/Toxperts, LLC – the important piece of this finding of fact – was still true. Including equipment expenses in that statement did not affect the outcome because even if the trial court had removed the word "equipment," it would have found that Sisco III used ASAP general funds to pay for ASAP Labs/Toxperts, LLC expenses. Therefore, the trial court's finding, although erroneous, was not substantially swayed by the inaccurate portion of the statement and was harmless. *Oliphant*, 460 S.W.3d at 897.

## CONCLUSION

We find the trial court did not violate Sisco III's right to due process by holding a bench trial solely on damages and dismissing his remaining claims with prejudice. Further, we find that there were no genuine issues of material fact regarding Allen's 50% ownership interest in ASAP Labs/Toxperts, LLC, and the trial court properly granted summary judgment on that matter. As such, we AFFIRM the trial court.

ALL CONCUR.

BRIEF FOR APPELLANT:

Donald L. Jones
Paintsville, Kentucky

BRIEF FOR APPELLEE
ALEXANDRIA ALLEN:

Damon B. Willis
Louisville, Kentucky

BRIEF FOR APPELLEE
EUGENE SISCO, JR.:

Jennifer A. Moore
Ashton Rose Smith
Louisville, Kentucky