**Kimberly DELEO, Appellant**

v.

**Christopher DELEO, Appellee**

**NO. 2015-CA-001706-MR**

Court of Appeals of Kentucky.

OCTOBER 27, 2017; 10:00 A.M.

BRIEF FOR APPELLANT: Vickie Masden Arrowood, Louisville, Kentucky.

BRIEF FOR APPELLEE: Scott E. Karem, Louisville, Kentucky.

BEFORE: CLAYTON, DIXON AND THOMPSON, JUDGES.

## OPINION

THOMPSON, JUDGE:

Kimberly Deleo appeals from the findings of fact, conclusions of law and judgment of the Jefferson Family Court in this dissolution of marriage action. She argues as follows: (1) the family court abused its discretion when it denied her motion to continue the trial; (2) the denial of her motion for a continuance of the trial denied her constitutionally protected right of due process; (3) the family court abused its discretion by delegating judicial authority to the child's therapist; (4) the family court failed to make findings required by Kentucky Rules of Civil Procedure (CR) 52.01 and Kentucky Revised Statutes (KRS) 403.320 in its order suspending Kimberly's visitation with her child; and (5) the family court failed to make specific findings regarding the parties inability to co-parent. We conclude the family court erred in denying Kimberly's motion to continue the trial and reverse and remand.

Kimberly and Christopher Deleo were married in 1993. During the marriage, the couple had three children, two of whom (L.D., born on March 11, 1999, and J.D., born on January 12, 2006), were minors at the time of the dissolution trial.

In early May 2014, Christopher filed a mental inquest warrant against Kimberly after she poured gasoline on and set fire to some of Christopher's clothing while the children were in the residence. Kimberly was removed from the home and an emergency protection order was entered restraining her from returning to the marital home. Shortly following these events, Kimberly entered treatment at Our Lady of Peace in their adult partial hospitalization program for depression and alcohol abuse.

On May 9, 2014, Christopher filed a petition for dissolution of marriage. Kimberly responded through retained counsel.

She also filed motions seeking a temporary parenting schedule, temporary maintenance and attorney fees. The parties agreed to a parenting schedule and, after the hearing on the temporary maintenance and attorney fees motions, the trial court awarded $2,000 per month in maintenance to Kimberly and Christopher was ordered to advance attorney fees to Kimberly's counsel in the amount of $1,500.

In July 2014, Christopher filed a motion to restrain Kimberly from violating a domestic violence order entered against her, which precluded her from being within twenty-five feet of the marital home. He alleged that on two separate occasions, Kimberly violated that order and sent him threatening text messages. He also filed a motion for the appointment of a guardian ad litem (GAL) and a custodial evaluator.

A GAL was appointed. The family court also appointed custody evaluator and licensed clinical psychologist, Deborah Grishman Blair. On October 15, 2015, Dr. Blair issued a thirty-nine page report that was unfavorable to Kimberly as to her role as custodian of the children. The report contains a complex analysis of the results of various psychological tests performed on Kimberly, Christopher and the children as well as her professional observations and conclusions.

Following Dr. Blair's report, Christopher filed a motion to suspend or supervise Kimberly's parenting time. Although the parenting schedule was adjusted, Kimberly's visitation remained unsupervised.

On February 26, 2015, a two-day trial was scheduled to be held on July 15 and July 17, 2015.

On March 4, 2015, Kimberly's attorney filed a motion for additional attorney fees to be advanced stating that his outstanding bill was approximately $6,000. The motion was denied.

On April 13, 2015, Kimberly's counsel filed a motion to withdraw stating that he had been discharged by Kimberly. During the court appearance when the motion was addressed, the family court asked Kimberly if she had discharged her attorney. When Kimberly did not respond, her attorney stated: "I have been fired your Honor."

On June 3, 2015, seven weeks before the scheduled trial date, Kimberly filed a *pro se* motion for an advancement of attorney fees so that she could retain an attorney for trial. On that same date, an attorney entered an appearance on Kimberly's behalf and filed a motion to continue the trial date because the attorney had a termination of parental rights trial scheduled on the same dates. Kimberly's motions were denied. The reason given by the family court for denying a continuance was that a new trial date could not be set for five to six months after the scheduled date.

On June 17, 2015, Kimberly renewed her motion to reschedule the trial. In that motion, Kimberly argued that the matters at issue, custody of her children and division of property, are constitutionally protected interests. She pointed out the difficulty she had obtaining an attorney because of her financial situation and that Legal Aid had declined to represent her. The motion was denied on June 22, 2015. Kimberly's new attorney was permitted to withdraw.

The trial commenced without Kimberly being represented by an attorney. We recite portions of the trial to give a glimpse of the complexity of the issues involved.

Dr. Blair testified in accordance with her report. She noted that the two older children refused any contact with Kimberly because of her erratic and disruptive behavior. The children described specific instances of that behavior including coming to the adult child's workplace and talking with her boss about the dissolution proceeding and causing disruption of L.D.'s soccer game when Kimberly approached a coach and school administrator about the dissolution. She also noted that the police were called multiple times because of Kimberly's behavior and that Kimberly failed to comply with prior court orders regarding parenting time. Dr. Blair concluded that Kimberly had demonstrated a pattern of maladaptive functioning and substance abuse. She further concluded:

[Kimberly's] rage and unpredictability suggest extreme instability and her behavior of the last few months has been erratic, poor judgment, and oft times, narcissistic. Her grandiosity combined with lack of self-control does not speak well for her becoming the custodial parent to either of the minor children.

During Dr. Blair's testimony, Christopher was permitted to play a video showing J.D. pretending to kill his father and cursing. Kimberly could be heard laughing and only lightly admonishing the child for his vulgar language which, Dr. Blair testified was very disturbing. After her testimony, Dr. Blair opined that sole custody of the minor children should be awarded to Christopher and that Kimberly's parenting time with J.D. should be suspended. She recommended J.D. see a child psychologist and that Kimberly and J.D. see separate family therapists for therapeutic reunification.

Christopher testified regarding Kimberly's anger issue and alcohol abuse, which he stated began five years earlier. He testified Kimberly became angry when he attended Al-Anon meetings including locking him out of the house, burning his credit cards and burning his clothing. Christopher also testified regarding email and texts between Kimberly and J.D. in which Kimberly expressed disdain for Christopher.

In 2014, Christopher earned $144,636 per year. During his testimony, he agreed to assume the parties' extensive tax debt, PNC credit card debt and the children's medical and dental expenses. He stated the marital home must be sold because neither party can afford it. Christopher testified that the extensive tax debt was incurred because of Kimberly's removal of approximately $300,000 from his retirement accounts over a course of years. He admitted that some of that money was used for family expenses.

Christopher's sister testified that Kimberly had been depressed for the last six years.

L.D. testified that Kimberly had episodes of anger and observed her drinking while driving. However, he also testified that Kimberly had been supportive of him, including during his three recent surgeries.

The family court ruled that Kimberly could not call J.D. to testify because she did not follow the proper procedure to call the child as a witness. Kimberly then renewed her motion for a continuance. The family court denied the motion.

The parties' adult child testified. She testified to instances of anger and violent episodes by Kimberly: Kimberly terrorizing her friends; Kimberly yelling and cursing; and Kimberly consuming wine while driving. However, the daughter testified Kimberly was instrumental in dealing with her learning and speech difficulties. Kimberly also took her to extracurricular activities throughout her childhood.

Kimberly's sister testified. She described Kimberly's extravagant spending habits. She also testified as to Kimberly's anger issues.

Kimberly testified that throughout most of the marriage, she stayed home with the children and now works part-time. During the marriage, she was responsible for caring for the children, two of whom have learning disabilities, and for maintenance of the household and family finances. Kimberly testified that she was constantly belittled by Christopher and that he was verbally abusive. She testified that Christopher denied her parenting time with J.D. on Thanksgiving, fall break and his birthday. Kimberly testified that her psychiatrist diagnosed her with major depression, anxiety disorder, insomnia and alcohol abuse.

Kimberly called witnesses including her neighbor, Kathleen Parsley. The substance of her testimony was that Kimberly's interactions with her children were appropriate. Jo Anna Mason, another neighbor and friend of Kimberly's, testified that Kimberly was emotionally devastated after the separation.

Kimberly's final witness was Linda Yates, a licensed clinical social worker and Kimberly's counselor at Our Lady of Peace. Yates testified that while Kimberly suffers from alcohol addiction, she acknowledges her addiction. She opined that Kimberly also suffers from depression, but it could be managed through therapy and medication. Linda testified that Kimberly continues to participate in group sessions every Monday night.

At the close of the evidence, the family court heard various contempt issues. The family court concluded the trial by ruling it would not suspend Kimberly's visitation at that time.

The family court issued its findings of facts, conclusions of law, judgment and decree on October 14, 2015. After reciting the evidence concerning Kimberly's alcohol consumption, anger issues, and her demonstrated inability to cooperate with Christopher, the family court found that the parties do not have the ability to co-parent.

After considering the factors in KRS 403.270, the family court concluded that the best interests of the children were served by awarding sole custody of the parties' children to Christopher.

As to visitation, the family court found L.D. was capable of making his own decision regarding having future contact with Kimberly. The family court suspended Kimberly's parenting time with J.D. "until it is recommended by a therapist. At that time, therapeutic visitation shall begin and then progress to supervised, and beyond, as recommended by the therapist." Notably absent from the family court's ruling was a finding that visitation would seriously endanger J.D.

Regarding child support, the family court found that Kimberly was voluntarily underemployed and imputed minimum wage income based on a full-time work week. She was ordered to pay $162 per month in child support. The parties were ordered to share the children's medical expenses in proportion to their incomes and Christopher was ordered to be solely responsible for therapy sessions.

The family court directed that the marital home be sold and the proceeds used to pay marital debts and any funds remaining used to satisfy the division of marital property. Any excess funds were to be distributed equally.

The family court did not order Kimberly to reimburse the funds withdrawn from the retirement accounts. Christopher was assigned the tax debt and the remaining retirement funds. He was also assigned the PNC credit card debt.

The family court awarded Kimberly a Honda Pilot and Christopher a 2014 Ford Escape. Additionally, personal property was to be divided equitably.

The family court found Kimberly in contempt for violations of the parenting time order regarding J.D. and engaging in communications with the child in violation of the court's orders. However, the family court withheld sentencing presuming that Kimberly would comply with all future orders of the court. It denied Kimberly's motion for contempt finding that although Christopher violated the parenting time order, he did so for the child's safety.

Kimberly appeals. Her initial contention is that she is entitled to reversal and a new trial because the family court's denial of her motions for a continuance were erroneous.

■ Parents have a superior right to the care and custody of their biological children and a fundamental, basic and constitutionally protected right to raise his or her children. *London v. Collins*, 242 S.W.3d 351, 357 (Ky. App. 2007). However, that superior right does not mean there is a right to appointed counsel during custody proceedings. *See May v. Coleman*, 945 S.W.2d 426, 427 (Ky. 1997); *Smith v. Bear, Inc.*, 419 S.W.3d 49, 55 (Ky. App. 2013). Kimberly concedes she was not entitled to appointed counsel but argues that she should have been granted a continuance so that her retained counsel could represent her at trial.

■ Because there is no statutory or constitutional right to counsel involved, our standard of review is that generally applicable when reviewing a decision to deny a continuance.

With respect to the denial of a continuance, our standard of review is whether the court abused its discretion. The court's discretion has been described as "a liberty or privilege allowed to a judge, within the confines of right and justice, to decide and act in accordance with what is fair, equitable, and wholesome as determined by the peculiar circumstances of the case[.]" *City of Louis-*

*ville v. Allen,* 385 S.W.2d 179, 182 (Ky. 1964) (overruled on other grounds by *Nolan v. Spears,* 432 S.W.2d 425 (Ky. 1968)) (*quoting In re Welisch,* 18 Ariz. 517, 163 P. 264, 265 (1917)).

*Guffey v. Guffey,* 323 S.W.3d 369, 371 (Ky. App. 2010) (internal citation omitted).

■ Although an abuse of discretion is the standard of review, the decision to grant or deny a continuance must be made within a legal framework so that there can be some meaningful appellate review. *Id.* at 372. In *Snodgrass v. Commonwealth,* 814 S.W.2d 579, 581 (Ky. 1991), *overruled on other grounds by Lawson v. Commonwealth,* 53 S.W.3d 534 (Ky. 2001), our Supreme Court provided that framework setting forth the factors to be considered:

1) length of delay;
2) previous continuances;
3) inconveniences to litigants, witnesses, counsel, and the court;
4) whether the delay is purposeful or is caused by the accused;
5) availability of other competent counsel;
6) complexity of the case; and
7) whether denying the continuance will lead to identifiable prejudice.

Although *Snodgrass* was a criminal case, the same factors are applicable to analyze a civil motion for a continuance considering all relevant facts and circumstances. *Guffey,* 323 S.W.3d at 371-72.

■ While a family court is not required to make written findings that it considered the *Snodgrass* factors, in this case, the family court orally stated its reason for denials of Kimberly's motions was because of the delay in the trial. As stated, the mere delay in a trial alone is not a sufficient reason to deny a continuance. When each factor is applied and when the totality of the circumstances is considered, we con-clude the family court abused its discretion.

Length of delay: There is nothing in the record which gives this Court dispositive information regarding the family court's calendar. However, a realistic time-line to obtain a new trial date would be anywhere from five to six months, the time it took for the matter to initially be set for trial. While any delay is undesirable in a child custody case, during this time the status quo would be maintained, including Christopher's sole custody of the children. We conclude this factor does not favor either granting or denying a continuance.

Previous continuances: There were no previous continuances requested or granted. This factor is in favor of granting the continuance.

■ Inconvenience: The Kentucky Supreme Court has held that any change in trial date is going to cause some inconvenience. "Thus, in order to become a factor for consideration there must be some significant or substantial inconvenience, which should be demonstrated on the record." *Eldred v. Commonwealth,* 906 S.W.2d 694, 700 (Ky. 1994), *abrogated on other grounds by Commonwealth v. Barroso,* 122 S.W.3d 554 (Ky. 2003). The only inconvenience noted by Christopher is that the trial would be delayed. As held in *Eldred,* that alone is insufficient to establish a significant or substantial inconvenience. This factor is in favor of granting a continuance.

Delay purposeful or caused by Kimberly: Kimberly had an attorney from the filing of her initial response to the petition for dissolution until she fired him in April 2015. Because it was Kimberly's decision to fire her attorney three months prior to the scheduled trial date, this factor favors denying a continuance.

Availability of other competent counsel: Kimberly repeatedly stated to the court

that she could not retain other counsel because she was without sufficient funds to pay a retainer fee and Legal Aid declined to represent her. When she did find counsel to represent her, because of a scheduling conflict, that attorney was unable to represent her. This factor weighs in favor of granting a continuance.

Complexity of the case: This was a moderately complex case. It included issues of child custody, parenting time, division of marital assets, division of marital debt and maintenance and scheduled for a two-day trial. Dr. Blair's report is lengthy and detailed and substantial financial records were introduced at trial. This factor weighs in favor of granting a continuance.

Identifiable prejudice: The final *Snodgrass* factor requires that Kimberly show identifiable prejudice. *Guffey*, 323 S.W.3d at 372. There is inevitably an imbalance at trial when one party is represented by counsel and the other party is without counsel. That is particularly true where, as here, the represented party intends to heavily rely on expert testimony to support that party's position. Without skilled cross-examination of Dr. Blair, her opinion as to Kimberly's ability to be a custodian of the children or have visitation, was highly damaging to Kimberly's case. Moreover, because the trial was not continued, Kimberly, who has been diagnosed with alcoholism and psychological disorders, was forced to cross-examine her children, a task that the most emotionally stable person would find difficult.

After review of the trial, we conclude that Kimberly was prejudiced by the lack of counsel. While Kimberly cross-examined Christopher's witnesses, predictably, her cross-examinations were unskilled and far less effective or substantively relevant than competent counsel would have performed. Additionally, various evidentiary issues arose including that J.D. was not permitted to testify because of Kimberly's failure to follow procedural rules. After the trial, in which no counsel represented Kimberly, her visitation with J.D. was suspended until a therapist recommended visitation. Not only was the delegation of the family court's discretion to decide when visitation could occur arguably erroneous, Kimberly was denied visitation with her child as a result of a proceeding where only Christopher was represented by counsel.

We are further troubled by the family court's failure to address maintenance even though the parties enjoyed a comfortable lifestyle during the marriage, Kimberly did not work outside the home during the twenty-year marriage, she did not receive a significant property award, and Christopher has an income of over $140,000 per year. Competent counsel would have requested that this issue be addressed.

Moreover, remand is required because the family court did not apply the proper standard in determining whether to suspend Kimberly's visitation with J.D. KRS 403.320 provides: "A parent not granted custody of the child is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would endanger seriously the child's physical, mental, moral, or emotional health." No such finding was made in this case.

■ Even in the absence of a motion for specific findings, a judge is required to "engage in at least a good faith effort at fact-finding and that the found facts be included in a written order." *Anderson v. Johnson*, 350 S.W.3d 453, 458 (Ky. 2011). Absent such effort, an appellate court may "remand the case for findings, even where the complaining party failed to bring the lack of specific findings to the trial court's attention." *Id.* Therefore, this case would

require remand even in the absence of the family court's abuse of discretion in denying a continuance of the trial date.

We have thoughtfully considered the totality of the circumstances in this case including the importance of the custody and visitation issues involved. We conclude the family court abused its discretion when it denied Kimberly's motion for a continuance of the trial without considering any other factor than that it would delay the trial.

For the reasons stated, the judgment of the Jefferson Family Court is reversed and remanded for further proceedings consistent with this opinion.

ALL CONCUR.