RENDERED: APRIL 11, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-1419-MR

DESHA BELL                                                      APPELLANT

v.       APPEAL FROM FAYETTE FAMILY COURT
         HONORABLE TIFFANY YAHR, JUDGE
         ACTION NO. 22-CI-02583

AARON JAMES FERRAL                                              APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, CETRULO, AND A. JONES, JUDGES.

CETRULO, JUDGE: Desha Bell ("Bell"), *pro se*, appeals from the Fayette

Family Court Findings of Fact and Conclusions of Law arising out of the

dissolution of her marriage to Aaron Ferral ("Ferral").[1] After careful review, we

affirm.

---

[1] Although not raised by the parties, the Court notes that the judgment directs counsel for Ferral to prepare a decree consistent with the family court's rulings. The record before us does not include a decree, despite references to one in subsequent pleadings and a qualified domestic relations order. Because the judgment includes finality language and resolves all issues of marital property and debts, we are addressing the merits of the appeal. Kentucky Rules of Civil

# BACKGROUND

In May 2017, Bell and Ferral rented a house together on Penmoken Park in Lexington, Kentucky ("Penmoken"). Ferral purchased the house that November. In June 2018, Ferral and Bell married in Fayette County, Kentucky.

After the couple developed concerns about mold in the home, they renovated Penmoken and sold it in November 2021. Subsequently, the couple used a portion of the proceeds from the sale to purchase a new home on Pinkney Drive in Lexington, Kentucky ("Pinkney").

Eventually, the marriage broke down, and the couple separated in August 2022. On September 9, 2022, Ferral filed for dissolution of the marriage.

On December 7, 2022, Ferral filed a motion to compel Bell's preliminary verified disclosure statement ("disclosure statement")[2] and for exclusive occupancy of Pinkney. On December 16, the family court held a hearing on the matter, and it denied Ferral's motion for exclusive occupancy of Pinkney, but ordered Bell to tender her disclosure statement and supporting documentation

Procedure ("CR") 54.01 and 54.02. The parties are certainly advised to have a decree properly entered.

[2] Kentucky Family Rule of Practice and Procedure 2(3) requires parties in a dissolution action to draft/compile and exchange "[a] preliminary disclosure statement, which is verified and contains the information required in the official AOC form 238 (Preliminary Verified Disclosure Statement) . . . within 45 days of service of the petition on the respondent[.]"

-2-

within 30 days. Additionally, the family court required the parties to participate in mediation once Bell tendered her disclosure statement.

On February 1, 2023, Ferral filed another motion to compel Bell's disclosure statement and for exclusive occupancy of Pinkney. The parties were scheduled for mediation on February 21, but Bell had still not provided her disclosure statement. On March 3, 2023, the family court held a hearing on Ferral's February 1st motion. At that hearing, Bell asserted that a settlement had been reached, but Ferral disagreed and argued the mediation was unsuccessful. Consequently, the family court continued the hearing until March 10 and extended Bell's document presentation deadline to March 6. Bell served Ferral with a copy of her disclosure statement on March 6, but she did not provide supporting documentation. On that same day, Bell filed a motion to compel Ferral to specific performance of the alleged settlement agreement.

On March 10, 2023, the family court heard arguments pertaining to both Ferral's and Bell's motions. The family court denied Bell's motion to compel. The family court granted Ferral's motion for exclusive use of Pinkney, ordered Ferral to advance Bell $5,000 of the marital estate, and ordered Bell to vacate the premises by April 7, 2023. Furthermore, the family court again ordered Bell to tender a complete copy of her disclosure statement and the required

supporting documentation by March 13. Bell produced the required documentation to Ferral by that time.

On August 2, 2023, after more failed settlement attempts and a case management conference, the family court entered a hearing order and set the matter for a final dissolution hearing on October 4, 2023. The order required the parties, whether represented by counsel or *pro se*, to "file with the Court and serve on the Fayette Family Court Sixth Division Office and opposing party or counsel a list and a copy of each exhibit expected to be introduced at the hearing . . . [and] a Final Verified Disclosure Statement along with the required supporting documentation." The exhibits and disclosures were to be filed/served within 14 business days of the final hearing.

On September 18, 2023, just over two weeks before the final hearing, Bell, *pro se*, filed a motion to replace her counsel and for a continuance of the final hearing. Three days later, Bell's counsel filed a motion to withdraw. That same day, Bell filed another motion for a continuance and to replace her counsel, in which she claimed that her counsel's withdrawal from the case was an "unforeseen development" that prejudiced her.

On September 29, 2023, the family court held a hearing on the withdrawal/continuance motions. At the outset, the family court allowed Bell's counsel to withdraw from the case. Next, the family court and the parties turned

their attention to Bell's continuance motion. The family court noted it had received a list of Bell's witnesses and exhibits; however, Ferral's counsel stated she had not received any such list from Bell. The family court told Bell that, after the continuance hearing, Bell needed to send the list to Ferral's counsel.

Ferral objected to the disclosure extension and continuance. He noted that the final hearing had been set for nearly two months; the dissolution had been pending for over a year; the dissolution had incurred "an absurd amount of attorney's fees"; and a continuance would further delay the matter. Bell then stated that she was unfamiliar with the law and had attempted to find another lawyer to take her case, but she was unable to find a lawyer that would do so on such short notice.

The family court noted that whether to continue the hearing was a matter of its discretion. The court further stated that there had not necessarily been other continuances but there had been "several other hearings about other issues in this case";[3] agreed with Ferral that the case needed "to move forward" because the case "had been pending for quite some time"; and the court did not "think there [were] that many issues that [] need[ed] to [be] address[ed]." Finally, the court stated that if it were to continue the final dissolution hearing, the new hearing

---

[3] The family court referred to a domestic violence petition involving Ferral and Bell, but that action is not part of the record on appeal.

would not be scheduled until 2024.  Rather than keep the parties financially connected during that time, the court found the parties needed resolution and denied Bell's motion for a continuance.

After denying the continuance, the family court informed Bell that she needed to send her witness and exhibit lists to Ferral's counsel, as well as corresponding copies of the exhibits.  The court informed Bell that it would make its decision(s) on whether to enter specific exhibits into evidence during the final dissolution hearing.

The dissolution hearing took the full day of October 4, 2023, with Ferral represented by counsel and Bell appearing *pro se*.  Both Ferral and Bell testified.  The family court informed Bell that she could move to submit evidence, but it reminded her that it would not take "wholesale" voluminous financial records, and she needed to introduce specific items with a corresponding specific purpose for introduction.  Further, the court reminded Bell that Ferral had a standing objection to the introduction of documents that had not been shared with his counsel or had been shared later than required.  While the court gave Bell "a little bit of latitude[,]" given that she did not have her own counsel, it informed her that they would address the introduction of evidence one document at a time.

Ferral objected for relevancy to many of the documents Bell unsuccessfully sought to have entered into evidence, because she introduced them

-6-

to prove undisputed facts. Other documents were not entered because of Ferral's successful hearsay objection. Ultimately, the court entered three of Bell's exhibits into evidence: notes relating to a conversation between Ferral and the realtor connected to Penmoken; Bell's student loan balance sheet; and checks signed by Bell showing she contributed to the Penmoken inspection and renovations.

The family court entered its findings of fact and conclusions of law on November 3, 2023. After categorizing property as marital and non-marital, the family court essentially equally divided the marital assets. Ferral retained Pinkney, but the marital interest in the residence was equally split. As for marital debts, each party assumed the responsibility of one marital vehicle and the respective expenses; each party assumed responsibility for their respective student loans; and Ferral assumed responsibility for the lion's share of the parties' known credit debt.[4] Finally, the judgment ordered that Bell was "entitled to an offset of $14,855." Bell timely appealed.

## ANALYSIS

At the outset, we note that Bell's brief falls woefully short of complying with the Kentucky Rules of Appellate Procedure ("RAP"). RAP 32(A)(4) requires an appellant's brief to contain:

---

[4] Ferral was responsible for a $20,413 credit card balance with UK Federal Credit Union. Bell assumed responsibility for an American Express credit card balance of $1,433 and a Lowe's card that the parties did not know the balance of but believed to be low.

An argument conforming to the statement of points and authorities, with ample references to the specific location in the record and citations of authority pertinent to each issue of law and which shall contain at the beginning of the argument a statement with reference to the record showing whether the issue was properly preserved for review and, if so, in what manner.

Bell's brief fails to offer any preservation statement(s), fails to cite to specific locations in the written record a single time, and fails to offer a single pin cite to the points of authority she claims support her arguments. *See Koester v. Koester*, 569 S.W.3d 412, 414-15 (Ky. App. 2019) (citation omitted) ("It is not the function or responsibility of this court to scour the record on appeal to ensure that an issue has been preserved.").

Furthermore, several cases cited in Bell's brief are either improperly cited or do not exist, which makes it difficult to ascertain what cases the brief attempts to cite to at all. Additionally, the authorities that Bell's brief cites to with correct information (*i.e.*, the correct reporters, court names, years, etc.) often do not support the arguments she claims they do.[5]

"When counsel fail to narrow focus to specific parts of a record, or when they point to little or no persuasive legal authority, they unnecessarily tax

---

[5] For example, Bell cites to *Sexton v. Sexton*, 125 S.W.3d 258 (Ky. 2004), and states that, there, "[t]he court emphasized the need for fair procedures and support to ensure that self-represented parties can adequately protect their rights." However, *Sexton* contains no such verbiage and has nothing to do with *pro se* parties or their rights. *See id*.

already limited judicial resources." *J.P.T. v. Cabinet for Health & Fam. Serv.*, 689 S.W.3d 149, 152 (Ky. App. 2024). Such failures enable this Court to strike a deficient brief and dismiss the appeal. *Id*. at 153 (citing RAP 10(B)). Given Bell's insistence, below and in her brief to this Court, that the family court had a duty to clarify and research the law for her, it appears she does not think the rules apply to her, a *pro se* litigant. This is not true. This Court has held that the rules of appellate procedure apply to all litigants, including *pro se* litigants. *Koester*, 569 S.W.3d at 415. Compliance with the RAP is "mandatory[,]" and Bell "is bound by the same rules of appellate procedure as [her] opposing counsel and any other party before this court." *See id*. at 413-15.

That said, out of an abundance of leniency, we address two arguments Bell has presented: (1) whether the family court erred when it denied Bell's motion for a continuance; and (2) whether the family court erred when dividing the marital estate. These two issues encompass many of the nine arguments raised in Bell's brief. We will not address other issues as they are either unsupported and/or unpreserved. *See* RAP 32.

**1. The Family Court Did Not Err When It Denied Bell's Motion For A Continuance.**

We review the family court's denial of a continuance for an abuse of discretion. *Deleo v. Deleo*, 533 S.W.3d 211, 216 (Ky. App. 2017) (citing *Guffey v.*

*Guffey*, 323 S.W.3d 369, 371 (Ky. App. 2010)). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999) (citations omitted).

Bell argues the family court abused its discretion when it denied her continuance because the case was complex; she was prejudiced by her lack of counsel; and she should have been given time to obtain new counsel. Conversely, Ferral argues the family court properly considered the factors required by law and properly denied Bell's continuance. We agree with Ferral.

"[W]hether a continuance is appropriate in a particular case depends upon the unique facts and circumstances of that case." *Guffey*, 323 S.W.3d at 371 (quoting *Snodgrass v. Commonwealth*, 814 S.W.2d 579, 581 (Ky. 1991), *overruled on other grounds by Lawson v. Commonwealth*, 53 S.W.3d 534 (Ky. 2001)). The trial court considers the following factors: "1) length of delay; 2) previous continuances; 3) inconveniences to litigants, witnesses, counsel, and the court; 4) whether the delay is purposeful or is caused by the accused; 5) availability of other competent counsel; 6) complexity of the case; and 7) whether denying the continuance will lead to identifiable prejudice[.]" *Id*. Family courts are "not required to make written findings" when considering these factors, and they may

orally state their reasons for granting or denying a continuance. *Deleo*, 533 S.W.3d at 217.

Here, the family court orally stated its reasons for denying Bell's motion for a continuance. The family court expressed concern about continuing to delay the dissolution hearing and keeping the parties financially connected. It stated that, while there were no previous continuances, there had been several other hearings that delayed finalization of the dissolution. It noted that there were not many issues left to resolve. Now, we review each of the factors to determine if an abuse of discretion occurred. *See Deleo*, 533 S.W.3d at 217 (where this Court reached its conclusion after it considered each continuance factor and the totality the circumstances).

Length of delay: If the family court had granted the continuance, we do not know exactly how long the hearing would have been delayed. The court stated that the earliest time that it could reschedule the hearing would be three to four months. We can find no hard and fast rule pertaining to what time period constitutes a significant delay in a marriage dissolution case. As such, we conclude that this factor did not weigh in favor of granting or denying a continuance.

Previous continuances: No other continuances had been granted; however, prior to the continuance hearing, the family court conducted a domestic

violence hearing and three hearings on the parties' motions to compel. We conclude that this factor weighed slightly in favor of Bell.

Inconvenience: Bell filed for the continuance approximately two weeks before the dissolution hearing. The family court did not rule on the motion until two and one-half business days before the scheduled hearing. Granting a continuance this close to the hearing date would undoubtedly inconvenience the parties, Ferral's attorney, and the family court. As Ferral argued below, a continuance would have inconvenienced him because Bell had control of his long-term cell phone number, and she would not cooperate in releasing the number to him until she was ordered to by the family court at the dissolution hearing. Further, both Ferral and Bell worked as teachers, and the family court scheduled the dissolution hearing during their mutual fall break. A continuance would have deprived both parties of the benefit of finalizing their dissolution during their mutual pause from work. Taken together, these circumstances amount to a "significant or substantial inconvenience[.]" *See id.* (quoting *Eldred v. Commonwealth*, 906 S.W.2d 694, 700 (Ky. 1994), *abrogated on other grounds by Commonwealth v. Barroso*, 122 S.W.3d 554 (Ky. 2003)). Thus, this factor weighed in favor of denying Bell's continuance.

Delay purposeful or caused by the movant: After her attorney filed a motion to withdraw as counsel, Bell claimed that his withdrawal constituted an

-12-

"unforeseen development" that necessitated a continuance for her to find new counsel. However, Bell first filed a separate motion to replace her counsel three days before he filed his motion to withdraw. While we can appreciate Bell's desire to obtain new counsel before the dissolution hearing, she initiated the sequence of events that caused her attorney to withdraw. Accordingly, we conclude that this factor weighed in favor of denying the continuance.

Availability of competent counsel: As stated, Bell had counsel up until two and one-half business days before the final dissolution hearing. We agree that it would have been difficult to obtain competent counsel in that short time frame.[6] Thus, this factor weighs in favor of granting the continuance.

Complexity of the case: Ferral and Bell were not married long; they did not have children together; and they kept their finances mostly separate. With past negotiations in mind and after considering Ferral's pretrial memorandum, the family court did not believe addressing the remaining issues would be complex. We agree. Bell argues that, like *Deleo*, this family law case is complex. However, that case involved a 20-year marriage and "included issues of child custody, parenting time, division of marital assets, division of marital debt and maintenance[.]" 533 S.W.3d at 218. Conversely, this case involves a couple that

---

[6] Although, we do note that she could have been looking for substitute counsel before or at the time she filed her first motion to replace counsel.

-13-

were married for just over four years, and the only issues were the division of marital assets and debt. Like the family court, we do not believe this was a complex case. Thus, this factor weighed in favor of denying the continuance.

Identifiable prejudice caused by denying the continuance: In *Guffey*, this Court said that, when a party asserts its lack of counsel as an identifiable prejudice, it must explain "how a later hearing in which she might have had representation would have rendered results different from the hearing at which she acted *pro se*." *Guffey*, 323 S.W.3d at 373. Bell has not shown how a continuance would have changed the outcome of the dissolution hearing. She simply argues that she deserved a more equitable outcome, but she does not describe what her desired outcome would entail. Thus, we do not believe Bell sufficiently identified how denying the continuance would have or did prejudice her. Accordingly, this factor weighed in favor of denying the continuance.

After weighing each factor and considering the totality of the circumstances, we conclude that the family court did not err when it denied the continuance. *See Deleo*, 533 S.W.3d at 217. We do think that whether to grant the continuance was a close call, however "[w]hile litigants may perceive the need to act *pro se* as a handicap, in reality a court makes an extra effort to compensate for the lack of representation by affording special courtesy and attention to the *pro se* litigant." *See Guffey*, 323 S.W.3d at 373. Here, the family court did not make a

-14-

decision that was arbitrary, unreasonable, unfair, or unsupported by sound legal principles, and the record reflects courtesy and patience by the family court to Bell. Thus, it did not abuse its discretion.

**2. The Family Court Did Not Abuse Its Discretion When It Divided The Marital Estate.**

This analysis requires us to determine whether the family court complied with Kentucky Revised Statute ("KRS") 403.190 when it divided the marital estate, and whether the family court's evidentiary rulings were in error. We review property division decisions and evidentiary rulings for an abuse of discretion. *Muir v. Muir*, 406 S.W.3d 31, 34 (Ky. App. 2013) (citations omitted); *Leach v. Commonwealth*, 571 S.W.3d 550, 554 (Ky. 2019) (citing *Clark v. Commonwealth*, 223 S.W.3d 90, 95 (Ky. 2007)).

Bell argues the family court did not equitably divide the marital property because (1) it did not allow her to enter Venmo and bank statements into evidence that showed her financial contributions; (2) it did not consider the income Ferral made playing in musical groups; (3) it did not take into account her role as a homemaker; and (4) it did not take into account her role as a project manager for the renovations done at Penmoken. Conversely, Ferral argues the family court properly divided the marital estate because it correctly excluded Bell's financial documents from evidence; his musical income was negligible; Bell never argued

-15-

that she was a homemaker below; and because many issues Bell argues were not in dispute. We agree that the family court did not err.

Marriage dissolution actions involve "a three-step process: (1) the trial court first characterizes each item of property as marital or nonmarital; (2) the trial court then assigns each party's nonmarital property to that party; and (3) finally, the trial court equitably divides the marital property between the parties." *Travis v. Travis*, 59 S.W.3d 90, 908-09 (Ky. 2001) (citations omitted). This case only requires us to analyze the third prong.

KRS 403.190 "mandates that the trial court divide marital property in 'just proportions.'" *Muir v. Muir*, 406 S.W.3d 31, 35 (Ky. App. 2013) (quoting *Garrett v. Garrett*, 766 S.W.2d 634, 636 (Ky. App. 1989)). The statute requires the family court to consider: "each spouse's contribution to the acquisition of marital property; the value of the property set apart to each spouse; the duration of the marriage; and the economic circumstances of each spouse at the time of the division." *Id.*

Kentucky Rule of Evidence ("KRE") 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Here, Bell introduced Venmo and bank statements to prove that she contributed to the daily household expenses, bills, and

renovations of Penmoken. Ferral objected because Bell did not disclose these financial documents properly and for relevancy. The family court sustained the relevancy objection because both parties testified that they evenly split expenses and bills. Because Bell introduced the Venmo and bank statements to prove matters that Ferral did not dispute, those documents did not tend to make the existence of those undisputed facts more probable. *See* KRE 401. Thus, Bell's financial documents were irrelevant, and the family court did not err by excluding them from evidence. *See id.* Likewise, the exclusion of the irrelevant evidence did not constitute an error when the family court divided the marital property.

Bell's arguments that the marital property was not justly divided because the court did not take into account her contribution as the Penmoken renovation project manager or Ferral's musical income fail for similar reasons. First, at the dissolution hearing, Ferral did not dispute that Bell acted as project manager for the Penmoken renovations, and the family court did allow her to enter financial documents into evidence that she claimed showed her contributions to the renovations. Next, while the family court's findings do not mention Ferral's musical income, the court did take notice of that income, which had been described as "petty cash," at the dissolution hearing. Bell's argument to this Court does not appear to be that the family court did not consider these factors, but rather that the family court should have given more weight to these factors.

It is not our role to reweigh the evidence in Bell's favor. *See Muir*, 406 S.W.3d at 34 (citations omitted) ("[A] reviewing court is not permitted to substitute its judgment for that of the family court unless its findings are clearly erroneous"). Review of the written record and the final dissolution hearing reveals that the family court considered Bell's project manager contributions and Ferral's musical income. This is all that was required for the court to divide the marital property in the "[j]ust proportions" required by KRS 403.190. *See id.* at 35-36.

Finally, Ferral is correct that Bell did not argue she acted as a homemaker below. After scouring the written and video records, we have not found anything that meaningfully supports Bell's contention that she performed "significant labor as [a] homemaker[.]" Further, Bell does not point us to anything in the record that supports this argument or its preservation. *See* RAP 32. Thus, the argument is without merit.

Bell argues that the family court's marital property division was not equitable. Yet, she received a $5,000 advance of the marital estate; the judgment awarded her a $14,855 offset; and she does not indicate what she should have additionally received. Furthermore, the family court performed its duty and properly divided the marital property in accordance with the requirements of KRS 403.190. Thus, the family court did not abuse its discretion when it divided the marital estate.

## CONCLUSION

Accordingly, we AFFIRM the findings of fact and conclusions of law of the Fayette Family Court.

ALL CONCUR.


BRIEF FOR APPELLANT:

Desha Bell, *pro se*
Lexington, Kentucky

BRIEF FOR APPELLEE:

Catherine Monzingo
Lexington, Kentucky