RENDERED: OCTOBER 17, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1281-ME

M.M.A.                                                              APPELLANT

v.                    APPEAL FROM LYON CIRCUIT COURT
                      HONORABLE NATALIE WHITE, JUDGE
                      ACTION NO. 24-AD-00001

COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES; J.J.A. (A
CHILD); AND R.H.                                                    APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CETRULO, KAREM, AND MOYNAHAN, JUDGES.

MOYNAHAN, JUDGE: Appellant, M.M.A. ("Mother"), appeals the Lyon Circuit Court's termination of her parental rights to Appellee, minor child J.J.A. ("Child"). The Commonwealth of Kentucky's Cabinet for Health and Family Services ("Cabinet"), is acting on behalf of Child as Next Friend in this matter. After careful review of the record, we AFFIRM.

# BACKGROUND

The Child at the center of this case (J.J.A.), was born on September 30, 2022, and placed in Cabinet custody four days later. Termination proceedings regarding Mother's parental rights to three older children were pending in the McCracken County Family Court at the time, triggering safety concerns for newborn J.J.A.[1]

Child was determined to be a neglected or abused child by order of the McCracken County Family Court soon after removal from Mother.[2] The Cabinet initiated termination proceedings in January of 2024, and the action was tried before the Lyon Circuit Court that July. Licensed clinicians, Cabinet staff, and M.M.A. gave testimony. The trial court subsequently issued detailed findings of fact and conclusions of law and entered an order terminating Mother's parental rights to Child on September 10, 2024. This appeal followed.

Mother argues that insufficient evidence existed to justify terminating her parental rights. She also contends that the trial court abused its discretion when it denied her request for a continuance made on the day of the hearing.

---

[1] Child has been in foster care since October 4, 2022, and is, by all accounts, doing well there.

[2] *See* Juvenile Action No. 22-J-00307-001, dated October 27, 2022.

## PROCEDURAL HISTORY

On October 30, 2023, the McCracken County Family Court terminated Mother's parental rights to three older children. Inadequate supervision and an overall lack of parental capacity were cited as reasons for this decision. Our Court affirmed that termination decision and Mother has a pending Motion for Discretionary Review with the Supreme Court.[3]

The Cabinet filed a petition to terminate Mother's parental rights to Child on January 10, 2024.[4] Notably, Mother was directly informed about this filing by Cabinet personnel *the next day*, January 11, 2024, during a McCracken County Family Court proceeding in the Child's underlying DNA case. Recognizing that Mother's last known address was in Tennessee, Cabinet personnel followed standard practice for constructively serving her the petition through a Warning Order Attorney. Lindell Choat was appointed as a Warning Order Attorney on January 20, 2022, and filed a report on March 15, 2024, indicating constructive service had been completed. Additionally, although Mother was properly notified of multiple pretrial conferences in this case, she failed to attend any of them. At the last pretrial conference on May 6, 2024, the

---

[3] *See* Supreme Court case number 2025-SC-0172-DGE.

[4] Appellee R.H. ("Father"), was properly notified but did not attend the evidentiary hearing. Although he is a named party in this matter, he did not appeal the termination of his parental rights to Child.

parties were ordered to submit a list of their expected witnesses and exhibits no later than fourteen days prior to the scheduled hearing. The Cabinet complied with this order. Mother did not. One day prior to the hearing held on July 24, 2024, Mother filed a Motion to Dismiss. Even though this Motion to Dismiss was incorrectly addressed and improperly noticed, the trial court allowed it to be filed and placed on the docket for consideration. (Of particular interest, the address Mother listed for herself on this Motion to Dismiss was the same Tennessee address on file and used by the Cabinet for all of Mother's notices in this case.)

On the day set for trial, July 24, 2024, the circuit court denied the Motion to Dismiss and heard argument on an oral Motion for a Continuance made by Mother's counsel. Finding that constructive notice had been completed months prior by Warning Order Attorney and with Mother not disputing the Cabinet's assertion regarding her actual knowledge of the petition's existence from January 2024, the court denied the continuance and the hearing proceeded as scheduled. The court did hold the record open for an extra fifteen days after the hearing to allow Mother an opportunity to submit additional evidence and exhibits.

On September 10, 2024, the trial court issued findings of fact and conclusions of law and entered an order terminating Mother's parental rights to Child. Mother filed a Notice of Appeal on October 8, 2024.

-4-

Briefs were filed in this matter. The Cabinet filed a motion to strike Mother's brief and dismiss her appeal due to her failure to properly preserve any arguments on appeal. This Court acknowledged significant deficiencies in the brief—which was also tendered late despite the Court having granted two separate motions for additional time to file—but allowed it to be filed as substantially compliant.

## STANDARD OF REVIEW

We review a trial court's involuntary termination of parental rights ("TPR"), under the clearly erroneous standard of review. Kentucky Rule of Civil Procedure ("CR") 52.01 states that "Findings of fact, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." *See also J.R.E. v. Cabinet for Health & Fam. Servs.*, 667 S.W.3d 589, 592 (Ky. App. 2023). Further, a judgment is not clearly erroneous if it is supported by substantial evidence, which is defined as "evidence of substance and relevant consequence having the fitness to induce conviction in the minds of reasonable men." *Owens-Corning Fiberglas Corp. v. Golightly*, 976 S.W.2d 409, 414 (Ky. 1998) (citing *Kentucky State Racing Commission v. Fuller*, 481 S.W.2d 298, 308 (Ky. 1972)).

Appellant additionally appeals the trial court's denial of her request for a continuance. Kentucky appellate courts apply an abuse of discretion standard

when reviewing the denial of a continuance. "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

## ANALYSIS

I.     Termination of Parental Rights

As our review is necessarily limited to the clearly erroneous standard, our focus is on whether the termination order is supported by substantial evidence. The trial court's findings will not be disturbed, unless there is no substantial evidence in the record to support its findings. *M.P.S. v. Cabinet for Human Resources*, 979 S.W.2d 114 (Ky. App. 1998). With this directive in mind, we begin our analysis by reviewing the statutes the trial court applied in this case.

To ensure that parents receive every appropriate due process protection in a TPR proceeding, Kentucky Revised Statute ("KRS") 625.090 requires satisfaction of a tripartite test by clear and convincing evidence. *Cabinet for Health and Family Services v. K.H.*, 423 S.W.3d 204 (Ky. 2014). The three prongs are: (1) the child must have been found to be an "abused or neglected child" as that term is defined by KRS 600.020(1); (2) termination of parental rights must be in the child's best interest; and (3) at least one of the grounds for termination listed in KRS 625.090(2)(a)-(k) must exist.

-6-

In the case at hand, Child was formally adjudicated as a neglected or abused child, with Mother named as the person responsible, by order of the McCracken County Family Court, a court of competent jurisdiction, on October 27, 2022.[5] After holding an evidentiary hearing and reviewing the record, the Lyon Circuit Court reached the same conclusion and made its own particularized finding of fact that the Child was abused or neglected pursuant to KRS 600.020(1) due to Mother's myriad actions and inactions. There is substantial evidence in the record to support this finding. This evidence includes extensive testimony from Cabinet employees, including the caseworker who monitored Mother's supervised visitation with Child, as well as a 70-page forensic report on Mother's parental capacity with accompanying testimony from the licensed clinician who evaluated Mother and produced the report.

Further, termination of Mother's parental rights is in the Child's best interest. KRS 625.090(3) lists a series of factors that must be considered when making a best interest determination. These factors include mental illness and/or intellectual disability, acts of abuse or neglect towards the subject child or any other child in the family, whether the Cabinet made reasonable efforts to reunite a child in Cabinet custody with the parent before filing the TPR petition, any efforts and adjustments the parent has made in her circumstances, conduct, or conditions

---

[5] *See* Juvenile Action No. 22-J-00307-001, dated October 27, 2022.

-7-

to make reunification in the child's best interest, the child's overall welfare and outlook for improvement if termination is ordered, and payment (or failure to pay) for a reasonable portion of the child's care and maintenance provided by the substitute caregiver (if parent is financially able to do so).

There is evidence in the record pertaining to each of these individual factors. A licensed psychologist (Dr. Kelsey Stout) met with Mother more than once, administered numerous tests, conducted six hours of forensic interviews, completed a significant review of the entire court record, and even reviewed multiple video clips Mother presented and asked her to review. She diagnosed three separate personality disorders.[6] Mother's acts of abuse or neglect towards Child's three older half-siblings are well documented in the McCracken County Family Court proceeding referenced above. Despite troubling issues with Mother's behavior in that matter,[7] the Cabinet wanted to allow supervised visitation to facilitate Mother's physical bonding with newborn Child. However, considering Mother's past actions, the Cabinet established ground rules to ensure safety for both the Child and Cabinet employees. Mother agreed to abide by these rules. Visitation was halted after the first visit due to Mother's refusal to adhere to

---

[6] Dr. Stout is not compensated by the Cabinet or Mother. She performs evaluations on behalf of the Court system to provide objective recommendations.

[7] Mccracken Circuit Court banned Mother from Cabinet property while she was pregnant with Child due to concerns about her aggressive behavior toward Cabinet employees involved in the dependency, neglect and abuse case involving her three older children.

the established guidelines.  Mother was observed showing little nurturing attention towards Child during this single visit.  Child's caseworker testified that Mother was repeatedly told it was essential that she follow the recommendations contained in the forensic evaluation and make demonstrable improvements in her behavior if she wanted to regain custody of Child.  Unfortunately, progress in these areas has not occurred.  The caseworker further stated that Child would be at high risk of abuse if returned to Mother's custody.  Child remains in foster care, has been reunited with three biological half-siblings, and is reportedly meeting all developmental milestones and doing well.  At the hearing Mother said she was working as a certified nursing assistant, and her wages are garnished $66 per month for child support.  The trial court meticulously documented this and additional evidence at length in its findings of fact and conclusions of law.  Thus, the trial court considered all the requisite factors when deciding that termination of Mother's parental rights would be in Child's best interest, and there is substantial evidence in the record to support its determination.

Finally, the court must find that at least one of the grounds for termination enumerated in KRS 625.090(2)(a)-(k) exists to support a TPR.  Mother met three of the statutory grounds for parental unfitness.[8]  There was objective evidence in the record, including Cabinet records and Mother's own testimony, to

_____

[8] (1) KRS 625.090(2)(e); (2) KRS 625.090(2)(g); and (3) KRS 625.090(2)(j).

substantiate each of the three individual grounds for parental unfitness. Again, the trial court meticulously documented the evidence that met the statutory criteria, weighed the evidence, and provided detailed written findings and conclusions based on the evidence.

In addition to the tripartite test detailed above, KRS 625.090 also affords parents the opportunity to present evidence regarding the Cabinet's reunification efforts and whether additional services would be likely to effectuate a child's return to the parent. *See* KRS 625.090(4). Mother asserts there has been no attempt at reunification and that the Cabinet provided no testimony at trial regarding any reunification efforts. However, there is both trial testimony and written documentation of the efforts the Cabinet made to enable Mother to bond with Child. Mother was repeatedly told that her case plan was to follow the recommendations in her forensic evaluation and make improvements to her behavior in order to regain custody. Mother failed to follow any of the recommendations, such as seeing a qualified licensed mental health practitioner to discuss medication options. Mother has likewise failed to moderate her conduct. Attempts to allow Mother to interact safely with Child and the three older children via videoconferencing were stopped after Mother yelled at the children when they played, argued with the Cabinet supervisor facilitating the video visit, and cursed in the children's hearing. The record also shows that Mother's continued verbal

-10-

abuse and threats created legitimate safety concerns for the Child's foster family—ultimately necessitating a restraining order.

## II.     Denial of Motion for Continuance

Mother's request for a continuance was primarily based on her assertion she was never properly served in this matter. The record indicates otherwise. As noted above, just after the Cabinet filed the underlying petition, it moved for the appointment of a Warning Order Attorney. This was in keeping with its practice and state law for serving out of state respondents. Mother's last known address was also included in the affidavit to assist the Warning Order Attorney's location efforts.

Rather than contesting that the Warning Order Attorney had completed service, Mother's counsel argued that service for out-of-state parties must be accomplished through the Secretary of State's Office. There is no such requirement. Although KRS 454.210, Kentucky's long-arm statute, does enable the Secretary of State to serve out of state residents, utilization of a Warning Order Attorney is valid and arguably more appropriate under these circumstances.[9] *See* KRS 625.070; *see also* CR 4.07.

---

[9] A Warning Order Attorney acts on behalf of the court system, making a diligent effort to locate and inform parties that an action has been filed. They are also legally mandated to file a formal report with the court detailing their attempts to locate the party being served. The Secretary of State's Office does not owe these same obligations to the court system.

In any event, even though service was already completed months prior to trial, the court took the extra step of temporarily delaying the hearing to make another copy of the affidavit, issue a formal summons, and have the bailiff personally serve Mother—to ensure there was no doubt service had been legally achieved.[10] After taking these additional steps, the court heard arguments from both sides about whether a continuance should be granted.

Several factors are relevant in a trial court's review of a continuance motion. *P.S. v. Cabinet for Health & Fam. Servs.*, 596 S.W.3d 110, 117 (Ky. App. 2020). *See also Deleo v. Deleo*, 533 S.W.3d 211 (Ky. App. 2017). Those specific factors are: "[1] length of delay; [2] previous continuances; [3] inconveniences to litigants, witnesses, counsel, and the court; [4] whether the delay is purposeful or is caused by the accused; [5] availability of other competent counsel; [6] complexity of the case; and [7] whether denying the continuance will lead to identifiable prejudice." *Snodgrass v. Commonwealth*, 814 S.W.2d 579, 581 (Ky. 1991), *overruled on other grounds by Lawson v. Commonwealth*, 53 S.W.3d 534 (Ky. 2001).

Mother argues that the trial court abused its discretion because it "did not go through the factors enumerated in *Deleo v. Deleo* to determine whether to

---

[10] This action is compliant with CR 4.09 which states that the initiating party may personally serve the respondent **at any time before judgment**, even if a warning order has already been entered, and, after such service, the case shall proceed as in other cases of actual service.

grant the request." However, the factors she references are actually delineated by the Kentucky Supreme Court in *Snodgrass*. In *Deleo*, this Court specifically held that a family court is not required to make written findings stating that it considered each individual *Snodgrass* factor. Rather, the totality of the circumstances is to be considered in a trial court's application of the seven factors. *Deleo*, 533 S.W.3d at 217.

Here, no continuances had been requested previously, and technology such as Zoom can arguably minimize potential inconveniences. However, Mother never claimed at trial or in her brief that she was unaware of the hearing date. As the trial court noted, Mother knew for some six months that this action was pending and declined to participate in multiple pretrial conferences.[11] In fact, she was completely silent in this matter until the day before the hearing. These choices contributed to any need for additional time to prepare a case. And the underlying TPR proceeding is relatively straightforward based on the facts of this case. Although Mother stated that her case is complex, she failed to explain or support that assertion with specific facts or legal arguments. Also, Mother clearly had access to competent counsel as she was represented at the hearing, where counsel herself stated that she had a pre-existing attorney-client relationship with Mother.

---

[11] Information about the upcoming TPR proceeding was again orally conveyed to Mother on March 20, 2024, and June 26, 2024, when she appeared in Mccracken Circuit Court for the underlying DNA action.

Moreover, any further delay in this case would have been considered highly undesirable given that Child had already gone two years without the stability of having a custodial parent. Finally, although Mother alleges that the trial court's denial of a continuance caused substantial prejudice, she does not explain how the result of the termination hearing would have been different had a continuance been granted. In fact, Mother was given fifteen extra days to submit additional evidence to bolster her case or counter the Cabinet's evidence – and she availed herself of that opportunity.

"Although an abuse of discretion is the standard of review, the decision to grant or deny a continuance must be made within a legal framework so that there can be some meaningful appellate review." *Deleo*, 533 S.W.3d at 217 (citing *Guffey v. Guffey*, 323 S.W.3d 369, 372 (Ky. App. 2010)). The Lyon Circuit Court's decision to deny a continuance was made within the legal framework provided by *Snodgrass*. Moreover, its decision also acknowledged the broader legal framework of termination proceedings. The child is always the ultimate focus of an appeal from a termination of parental rights, and the child's well-being is paramount. After two years, this Child deserved a permanent resolution and stability, and granting a continuance would not have furthered that important interest. When the totality of these circumstances is considered, we find that the

trial court did not abuse its discretion in denying the request for a continuance on the day of the hearing.

## **CONCLUSION**

We find neither clear error nor an abuse of discretion in the trial court's decisions, and hereby AFFIRM the Lyon Circuit Court's September 10, 2024, findings of fact and conclusions of law and order of judgment.

ALL CONCUR.

BRIEF FOR APPELLANT:

Bethanni Forbush-Moss
Louisville, Kentucky

BRIEF FOR APPELLEE
COMMONWEALTH OF
KENTUCKY, CABINET FOR
HEALTH AND FAMILY
SERVICES:

Kevin Martz
Covington, Kentucky